STATE EX REL. VAIL V. W. E. CRAIG ET AL.

1. INJUNCTION CANNOT TAKE THE PLACE OF QUO WARRANTO.

Injunction cannot be made to take, directly or indirectly, the place of *quo warranto*. Therefore, an action, under secs. 1277 and 1278, Rev. Stat., authorizing taxpayers to sue when the prosecuting attorney, upon request, fails to do so, will not lie to restrain a county auditor from paying salaries to deputy supervisors of elections on the ground that the law (sec. 2966–3, Rev. Stat.), under which they assume to act, is unconstitutional.

2. NOT AUTHORIZED BECAUSE TAXPAYER IS WITHOUT OTHER REMEDY.

The mere fact that a proceeding in *quo warranto* can only be brought by a designated public officer, and that if such officer should decline to bring such proceeding, a taxpayer is without remedy, is not sufficient to authorize an action under secs. 1277 and 1278, Rev. Stat. Taxpayers are left in many cases without remedy except by the faithful performance of duty by public officers, the law presuming that such officers will properly perform the duties incumbent upon them.

APPEAL.

*Samuel Doerfler*, for relator.

*P. H. Kaiser* and *F. L. Taft*, for defendants.

MARVIN, J.

This case comes into this court by appeal from the judgment of the court of common pleas. The suit is brought under favor of sec. 1278, Rev. Stat.

Section 1277 provides: "The prosecuting attorneys of the several counties of the state, being satisfied that the funds of the county or any public monies in the hands of the county treasurer, * * * are about to be * * * misapplied * * * may apply by civil action in the name of the state, to a court of competent jurisdiction to restrain such contemplated misapplication of funds."

Section 1278 provides: "In case the prosecuting attorney fails, upon a written request of any taxpayer of the county, to make the application * * * contemplated in the preceding section, such taxpayer may * * * institute such civil action in the name of the state * * *."

The petition sets out that the relator is a taxpayer of Cuyahoga county; that he has requested, in writing, the county solicitor and the county prosecutor of said county to bring a suit for the same purpose for which he brings this suit; and that each of such officers has declined to bring the suit.

The petition further alleges, that the defendant Craig, as auditor of Cuyahoga county, will, unless restrained by the order of the court, issue his warrant for the payment of salaries to John G. Fisher, Daniel G. Gindlesperger, John Bell and Clark E. Miller, members of the board of deputy state supervisors of elections, and to Clifford A. Neff as clerk of such board; and that the defendant, the board of commissioners of such county, will, unless restrained, make a levy of taxes to meet such payments. The prayer is for a perpetual injunction against such auditor and board of commissioners.

The claim made on the part of the plaintiff is that sec. 2966–3, Rev. Stat., under which said board of supervisors and the clerk of such board have been appointed and assume to act, is in contravention of the constitution of the state. This is the only ground on which it is claimed that the injunction prayed for should be allowed. To this petition a general demurrer is filed by the defendants.

In support of this demurrer, it is urged that the question sought to be raised by the relator cannot be determined in this action; that the *real* purpose of the action is to oust the parties, the payment of whose compensation is sought to be enjoined, from the several offices which they assume to hold.

On the other hand, it is urged that even though the right of these parties to hold their official positions is necessarily involved in a determination of the questions raised in the petition, still, that as the result, even if the prayer of the petition should be granted, would not be a judgment of ouster, the relator is entitled to the relief sought in his petition.

It is certain that only by a determination of the right of these parties to hold their several offices and that they are not so entitled to hold, could the court grant the relief prayed for in the petition. This, there-

fore, presents directly for the consideration of the court the question of whether in an action of this kind such determination can be made.

Without doubt, the right of these parties to hold their positions as members and clerk respectively of the board of deputy supervisors of elections, could properly be tested by a proceeding in *quo warranto* brought directly against them. But it is urged on the part of the plaintiff, that he can obtain no relief by any such proceeding in any action which he can bring, because *quo warranto* can only be brought by a public officer designated in the statute; and that in case such officer declines to bring such proceeding, a taxpayer is left without remedy. And this is, doubtless, correct; but this fact alone is not sufficient to authorize in this action the trying of the question. which would be tried by proceedings in *quo warranto*. The taxpayer is left in many cases without remedy except by the faithful performance of duty by the public officers. The law presumes that the officers will properly perform the duties incumbent upon them.

In Meacham on Public Officers, at sec. 994, in speaking on the subject of injunctions, this language is used: "It is well settled also as has heretofore been seen (sec. 477), that the writ cannot be made directly or indirectly to take the place of *quo warranto* and other similar remedies in trying the title to public offices. It will, therefore, not be granted to prevent one alleged to have no legal title, from exercising the functions of an office during a trial to determine the title, or for qualifying for, or on entering upon the exercise of the office, or from receiving the salary or fees attached to it."

To the same effect is sec. 850 of Throop on Public Officers, the language being:

"It is well settled that an injunction will not lie to oust a usurper from a public office, and to put the rightful officer into possession, as that relief can be obtained by information in the nature of a *quo warranto*. Nor will it lie in aid of an information, or other proceeding to try the title, by restraining the person in possession, from exercising the functions, or receiving the emoluments of the office, even upon an allegation of insolvency. * * * "

The case of Tappan v. Gray, 9 Paige's Ch., 507, was an action brought by Tappan, in which he charged that Gray had intruded into the office of flour inspector; that he (Tappan) was entitled to such office, and that Gray had no title thereto, or right to perform, or receive the compensation for the duties of such office. The complaint also alleged that Gray was insolvent and wholly unable to respond to Tappan for the fees and emoluments of the office. The case was first tried before the vice-chancellor who held with the complainant; but, upon appeal to the chancellor, the holding of the vice-chancellor was reversed solely upon the ground that the court of chancery had no jurisdiction to try the questions raised. The chancellor found that the complainant was entitled to the office, and that the defendant was an intruder without any authority whatever to exercise the functions of the office.

The concluding part of the opinion in this case reads: "I conclude, therefore, that the defendant, at the time of the filing of complainant's bill, had intruded himself into an office which he was not then legally entitled to, under the provisions of the Revised Statutes, and that the complainant is entitled to the fees and emoluments of the office until he is superseded by the valid appointment of a successor. But upon the ground that at the time of the filing of this bill the court ot chancery

had no jurisdiction nor power to afford him any relief, the decree of the vice-chancellor must be reversed and the decree allowed."

The case of Stone v. Wetmore, 47 Ga., 601, was an action brought by Stone alleging that he was the ordinary of Chatham county; that the defendant Wetmore, without any authority of law, had intruded himself into such office and was assuming to act as ordinary and receive the fees of the office. The petition was in the nature of *quo warranto* to eject Wetmore from the office and, as some time must elapse before the matter could finally be disposed of, the plaintiff prayed for an injunction against Wetmore to restrain him from receiving the fees of such office. And in the opinion, on page 602, this language is used by the court:

" For the purposes of public policy it is a settled rule that an officer *de facto* may do legal acts though his title to the office may be defective * * *. The same public policy which establishes this rule, prevents the courts from interfering to disturb the *de facto* officer in the receipt of the fees. If he works, he must live."

In Prince v. Boston, 148 Mass., 285, the syllabus reads: " The title to office of the board of police of the city of Boston, appointed by the governor under the statutes of 1885, c. 323, can only be impeached directly by an information in the nature of a *quo warranto*, and not collaterally by a petition in equity, under the Pub. Statutes, c. 27, sec. 129, to prevent the raising and appropriation of moneys by the city to pay the salaries and expenses of such board, and the expenses of the police department upon its requisition."

This action was brought by ten taxable inhabitants of the city of Boston. It was originally brought against the city alone to restrain it from raising or appropriating moneys to pay the salaries or expenses of its board of police, and the expenses of its police department, upon the requisition of such board. Later the petition was amended by making the board of police and its members parties defendant. The defendants demurred to the petition for want of equity. The ground upon which the plaintiffs sought to maintain their bill was that the statute under which the board of police assumed to act, was unconstitutional.

The statute under favor of which the plaintiffs brought their action, reads:

" When a town votes to raise by taxation or pledge of its credit, or to pay from its treasury, any money for a purpose other than those for which it has the legal right and power, the supreme judicial court may, upon the suit or petition of not less than ten taxable inhabitants thereof, briefly setting forth the cause of complaint, hear and determine the same in equity."

In the opinion, on page 287, this language is used:

" The case at bar, we think, presents a strong illustration of the wisdom of the rule that the title to a public office cannot be collaterally impeached. If we should enter a decree in favor of the plaintiffs, it could not remove the board of police; they would still retain their office, and thus would be produced confusion and a conflict of authority between them and the old commissioners of police, or the mayor and aldermen, and, probably, disorganization and disorder in the police department, upon which the peace of the city largely depends. All difficulties will be obviated by trying the title to the office in the proper way, by an information in the nature of a *quo warranto*, the result of which would finally adjudicate and settle the rights of all parties.

" We are of opinion that it was not the intention of the legislature or the purpose of the statute that such questions should be tried in proceedings under it, in which neither the commonwealth nor the holders of the office need be parties."

We feel that the authorities to which attention has been called in this opinion and the reasoning used is sufficient to warrant us in holding that the demurrer to the petition in this case should be sustained.

If the demurrer were to be overruled, and no answer filed by the defendants or either of them, and a decree entered granting the prayer of the relator, it would not have the effect to dispossess either the board of deputy supervisors or its clerk from holding the offices which they now assume to hold. They might go on and work without pay, which they probably would not do, and if they should refuse to work, or should resign their several offices, matters in connection with elections would be left in great confusion. The question would remain open as to what officer should perform the necessary duties incident to the public elections, and, until such question should be settled in a proper case, the whole matter would be left at sea.

The judgment of the court, therefore, is that the demurrer be sustained.