FREDERICK O. PRINCE & others *vs.* CITY OF BOSTON & others.

Suffolk.    November 20, 21, 1888. — January 3, 1889.

Present : MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Boston Board of Police — Title to Office — Quo Warranto — Equity Jurisdiction.*

The title to office of the board of police of the city of Boston, appointed by the Governor under the St. of 1885, c. 323, can only be impeached directly by an information in the nature of a *quo warranto*, and not collaterally by a petition in equity, under the Pub. Sts. c. 27, § 129, to prevent the raising and appropriation of moneys by the city to pay the salaries and expenses of such board, and the expenses of the police department upon its requisition.

PETITION IN EQUITY, under the Pub. Sts. c. 27, § 129, filed on May 6, 1887, by ten taxable inhabitants of the city of Boston, brought originally against the city alone, to restrain it from raising or appropriating moneys to pay the salaries and expenses of its board of police, and the expenses of its police department upon the requisition of such board.

The bill, among other things not material, alleged that on or about July 23, 1885, the Governor, by virtue of the provisions of the St. of 1885, c. 323, appointed as members of the board

of police of the city of Boston three persons, who proceeded to take possession of the property of the police department and entered upon the duties of the police commissioners then in office, which duties they still continued to exercise; that in the years 1885 and 1886 the city council had passed orders for the raising by taxation and for the appropriation of large sums to defray the current expenses of the police department, and had passed similar orders for the year 1887; that since October 26, 1885, the auditor and treasurer of the city, as ordered by the city council, had allowed and paid from such appropriations the salaries and expenses of the board and the expenses of the police department upon its requisition; and that such payments were beyond the legal right and power of the city to make, because the St. of 1885, c. 323, for reasons stated, was unconstitutional and void.

The prayer of the bill was that the city, and its officers, agents, and servants, might be enjoined from collecting, appropriating, or paying any moneys for the purpose of supporting or defraying the expenses of the board, or the expenses of the police department upon its requisition. The petition was amended by making the board of police and its members parties defendant. The defendants demurred to the petition for want of equity.

Hearing upon the petition and demurrers before *Devens*, J., who reserved the case for the consideration of the full court.

*S. Bartlett & R. D. Weston-Smith*, (*C. A. Prince* with them,) for the petitioners.

*W. G. Russell & G. Putnam*, for the board of police.

MORTON, C. J. An interesting question of jurisdiction lies at the threshold of this case. The suit is brought under § 129 of the Pub. Sts. c. 27, which provides : " When a town votes to raise by taxation or pledge of its credit, or to pay from its treasury, any money for a purpose other than those for which it has the legal right and power, the Supreme Judicial Court may upon the suit or petition of not less than ten taxable inhabitants thereof, briefly setting forth the cause of complaint, hear and determine the same in equity." The relief sought is that the city of Boston should be enjoined from raising or appropriating any money for the purpose of paying the salaries and

expenses of the board of police appointed by the Governor under the St. of 1885, c. 323.* The ground upon which the plaintiffs seek to maintain their bill is, that the statute of 1885 is unconstitutional, and therefore such payments are for an illegal purpose within chapter 27 of the Public Statutes.

The statute under which these proceedings are brought was first enacted in 1847. Numerous cases have arisen under it, but this is the first instance in which it has been attempted to use it for the purpose of trying the title to office of one who is exercising the functions and performing the duties of a public office under an appointment by the Governor, acting under the authority of the Legislature. As a general rule, the title to such an office cannot be assailed collaterally; if he is holding without right, the remedy is by an information in the nature of a *quo warranto.* Under such an information the title to the office can be fully tried and conclusively settled. But the statute in question is not adapted for such a purpose. Ordinarily, the person holding the office which is assailed is not a party to a suit under the statute, and if, as was done by amendment in the case at bar, he is made a nominal party, no decree or judgment can be rendered against him. No judgment of ouster could be rendered, but after a decree in favor of the petitioners he would continue still to hold the office.

The case at bar, we think, presents a strong illustration of the wisdom of the rule that the title to a public office cannot be collaterally impeached. If we should enter a decree in favor of the plaintiffs, it could not remove the board of police; they would still retain their offices, and thus would be produced confusion and a conflict of authority between them and the old commissioners of police, or the mayor and aldermen, and, probably, disorganization and disorder in the police department, upon which the peace of the city largely depends. All difficulties will be obviated by trying the title to the office in the proper way, by an information in the nature of a *quo warranto*, the result of which would finally adjudicate and settle the rights of all parties.

We are of opinion that it was not the intention of the Legis-

---

* See *Commonwealth* v. *Plaisted, post,* p. 375.

lature or the purpose of the statute that such questions should be tried in proceedings under it, in which neither the Commonwealth nor the holders of the office need be parties.    It has never been held that the statute gives an absolute right to any ten tax-payers to maintain a bill in equity, whenever a city or town has voted to pay money from its treasury for a purpose which is not legal.    It gives the court jurisdiction to hear and determine the matter in equity, and it has been held that the court will not grant relief where the plaintiffs have been guilty of laches by delaying to bring their suit until the rights of other persons have been affected by the action of the town. *Tash* v. *Adams*, 10 Cush. 252.  *Fuller* v. *Melrose*, 1 Allen, 166. And in *Fisk* v. *Springfield*, 116 Mass. 88, where ten tax-payers brought a bill to enjoin the city from paying damages under an unlawful order to change the grade of a street, the court dismissed the bill, holding that a petition for certiorari was the proper remedy.

There is another view which leads to the same result.    The statute of 1885 transfers the control, management, and direction of the police department of Boston from the board of police commissioners appointed by the mayor and city council to the board of police appointed by the Governor.   St. 1878, c. 244. St. 1885, c. 323.    The city of Boston has accepted and acted upon the statute, and has fully recognized the board of police appointed by the Governor as in fact the head of the police department of the city, and has conferred upon it extensive powers and duties.    Revised Ordinances of 1885, c. 26, §§ 1, 6.*

---

* These sections are as follows :

" Section 1.    The board of police shall have and exercise all the powers conferred by the statutes of the Commonwealth and the ordinances of the city upon the board of aldermen or upon the mayor and aldermen, in relation to licensing, regulating, and restraining billiard-tables, bowling-alleys, auctioneers, hawkers and peddlers, carriages, wagons and other vehicles, intelligence offices, itinerant musicians, pawnbrokers, and dealers in second-hand articles and old junk."

" Section 6.    The board of police shall have the care and management of all the city property belonging to the department, and the control and operating of such steamboats as are now or may hereafter be provided for its use; and the said board shall designate such officers and men as are necessary to constitute the harbor police for service on board such boats."

The members of the board are performing the functions of a necessary public office, under an act of the Legislature passed in due form, and with the sanction of the city. We think it is competent for the city, until the act of the Legislature is upon proper proceedings judicially declared to be invalid, to appropriate money for the purpose of paying their expenses and the expenses of the police department upon their requisition. Money thus appropriated is not expended for an illegal purpose. It is expended for the support of the police department, administered under the direction of a board recognized by the city, who are rendering service for the city under its sanction and at its implied request, and who are entitled to receive compensation for such services.

For the reasons stated, we are of opinion that the plaintiffs' bill cannot be maintained; and as we have no jurisdiction under it to inquire into the title to office of the board of police, we cannot properly consider the constitutional questions raised by the plaintiffs.                    *Bill dismissed.*

