CHARLES F. WALCOTT & others *vs.* CITY OF CAMBRIDGE & another.

Middlesex. May 5, 1966. — June 6, 1966.

Present: WILKINS, C.J., SPALDING, KIRK, SPIEGEL, & REARDON, JJ.

*Equity Jurisdiction,* Taxable inhabitants' suit, To try title to public office. *Public Officer*

A taxable inhabitants' suit under G. L. c. 40, § 53, to prevent the defendant, purportedly appointed city manager of a city under a Plan E charter, from expending money or incurring any financial obligation on behalf of the city or collecting compensation as city manager could not be maintained where the suit was premised upon the defendant's alleged ineligibility in office and upon his alleged inability to legally receive a salary from the city and constituted a collateral attack upon his title to the office.

BILL IN EQUITY filed in the Superior Court on February 11, 1966.

The suit was reported by *Thompson, J.*

*Philip M. Cronin* for the plaintiffs.

*Robert W. Meserve* (*Charles R. Parrott* with him) for the defendant DeGuglielmo; *Andrew T. Trodden,* City Solicitor, for the City of Cambridge, also with him.

WILKINS, C.J. This suit by more than ten taxable inhabitants against the city of Cambridge and Joseph A. DeGuglielmo (herein called the defendant), recently chosen city manager (see *Curry* v. *Cambridge, ante,* 28), is brought purportedly pursuant to G. L. (Ter. Ed.) c. 40, § 53. The bill of complaint questions the validity of the defendant's appointment as city manager, and seeks to prevent his expending money or incurring any financial obligation on behalf of the city or collecting compensation as city manager. The defendants were separately represented. A demurrer to the bill by the defendant DeGuglielmo was overruled, and both defendants appealed. The case was then presented on agreed facts signed by counsel for all the parties and is reported without decision by a judge of the Superior Court. G. L. c. 214, § 31.

Preferring to base our decision on actual facts we forego discussion of the demurrer and proceed directly to the merits. See *Olszewski* v. *Sardynski,* 316 Mass. 715, 717.

Cambridge has a Plan E charter. G. L. c. 43, §§ 93–116, as amended. There is a city council, elected at large, and a mayor elected from among its members. On January 10, 1966, the city council purported to appoint the defendant as city manager. To obviate a legal question, a majority of the council voted to remove the predecessor city manager (see G. L. c. 43, § 103, as amended through St. 1950, c. 353), and on February 12, 1966, again voted to appoint the defendant.

The defendant was elected to the Ward 7 Democratic Committee at the Presidential primary on April 28, 1964. G. L. c. 52, § 2, as amended. Thereafter he was elected to be chairman of the city committee, which is composed of the members of the several ward committees. G. L. c. 52,

§§ 3, 4. On February 16, 1966, he resigned from the ward committee and, as matter of law, automatically ceased to be chairman of the city committee.

The defendant was elected to the city council in November, 1945, and served until the first Monday of January, 1964, when he resigned. On January 27, 1964, in accordance with G. L. c. 32, § 5, as amended, he filed an application for retirement from the city council on the grounds of superannuation. The city retirement board at a meeting on February 25, 1964, voted to retire him and to pay the allowance provided in c. 32, § 5. The State Division of Insurance approved an allowance as of February 1, 1964, in the yearly amount of $2,218.68. This he has received. On February 14, 1966, the defendant wrote the members of the city retirement board that having been elected to the office of city manager, he waived and renounced for himself, his heirs, and legal representatives any and all rights to receive any pension or retirement allowance due him from any governmental source during his incumbency as city manager. See G. L. c. 32, § 91, as amended. The annual salary payable to the city manager is no less than $15,000 and no more than $20,000 depending upon length of service of the incumbent.

The fundamental issue is whether the plaintiffs have a remedy in G. L. (Ter. Ed.) c. 40, § 53, which provides: "If a town or any of its officers or agents are about to raise or expend money or incur obligations purporting to bind said town for any purpose or object or in any manner other than that for and in which such town has the legal and constitutional right and power to raise or expend money or incur obligations, the supreme judicial or superior court may, upon the petition of not less than ten taxable inhabitants of the town, determine the same in equity, and may, before the final determination of the cause, restrain the unlawful exercise or abuse of such corporate power."

The defendants, relying largely upon *Prince v. Boston,* 148 Mass. 285, contend that the suit is really for the purpose of trying the defendant's title to office. This the

plaintiffs deny and insist that the suit is to prevent the incurring of illegal expenditures. The expenditures assailed, however, arise out of the defendant's incumbency as city manager. While no definite allegation of an intended specific illegal expenditure, other than the defendant's salary, is made, the suit undeniably is based upon the prospect that expenditures will be made while the defendant holds the office.

The relief sought under c. 40, § 53, is premised (1) upon the defendant's ineligibility in office due to a supposed violation of c. 43, § 103, in that he was elected to a ward committee of a political party and thence to the chairmanship of its city committee; and (2) upon the defendant's alleged inability to receive a salary because of G. L. c. 32, § 91, in that he is receiving a retirement allowance from the city.

In showing the illegalities claimed, the plaintiffs would prove simultaneously that the defendant was improperly chosen city manager, or that, as a matter of public policy, he cannot hold the office without receiving a salary. See *Allen* v. *Lawrence,* 318 Mass. 210, 213.

This is an attack upon the defendant's title to the office and is one kind of suit against illegal expenditures that taxpayers have not been permitted to make. In *Bell* v. *Treasurer of Cambridge,* 310 Mass. 484, the facts are quite out of the ordinary. A holder of the office of mayor, convicted in the Superior Court, in order to obtain a stay of sentence, agreed he would not exercise the powers of his office, and then, notwithstanding his stipulation, tried to collect the salary. Title to the office was not assailed. The mayor had, in effect, made a voluntary suspension of the office. "In the unusual circumstances existing in this case" (p. 491) payment was enjoined.

Public policy does not favor allowing taxpayers to intrude into the appointment of every officer or employee of a municipality by becoming voluntary plaintiffs in a suit under c. 40, § 53. See *Povey* v. *School Comm. of Medford,* 333 Mass. 70, 71. The case of *Prince* v. *Boston,* 148 Mass. 285, is controlling in the case at bar. That suit was brought

under Pub. Sts. c. 27, § 129,[1] a predecessor of G. L. c. 40, § 53, to prevent the city from raising or appropriating money to pay salaries and expenses of the board of police appointed by the Governor under an allegedly unconstitutional statute. Jurisdiction was denied. At pages 287–288, it was said: "The case at bar, we think, presents a strong illustration of the wisdom of the rule that the title to a public office cannot be collaterally impeached. If we should enter a decree in favor of the plaintiffs, it could not remove the board of police; they would still retain their offices, and thus would be produced confusion and a conflict of authority between them and the old commissioners of police, or the mayor and aldermen, and, probably disorganization and disorder in the police department, upon which the peace of the city largely depends. All difficulties will be obviated by trying the title to the office in the proper way, by an information in the nature of a *quo warranto*,[2] the result of which would finally adjudicate and settle the rights of all parties. We are of opinion that it was not the intention of the Legislature or the purpose of the statute that such questions should be tried in proceedings under it, in which neither the Commonwealth nor the holders of the office need be parties. It has never been held that the statute gives an absolute right to any ten tax-payers to maintain a bill in equity, whenever a city or town has voted to pay money from its treasury for a purpose which is not legal."

Cases where payments of salaries are about to be made in violation of some provision of law not related to the appointment or choice of the payee or payees are distinguishable. See, for example, *Clements* v. *Treasurer of Cambridge*, 324 Mass. 73.

A final decree is to enter dismissing the bill.

*So ordered.*

---

[1] "When a town votes to raise by taxation or pledge of its credit, or to pay from its treasury, any money for a purpose other than those for which it has the legal right and power, the supreme judicial court may upon the suit or petition of not less than ten taxable inhabitants thereof, briefly setting forth the cause of complaint, hear and determine the same in equity."

[2] G. L. (Ter. Ed.) c. 249, § 12. *Brierley* v. *Walsh*, 299 Mass. 292, 295. *Attorney Gen.* v. *Goldberg*, 330 Mass. 291, 292–293.