ELIAS MITCHELL & others *vs.* ALBANIAN ORTHODOX DIOCESE IN AMERICA, INC. & others.

Suffolk. December 6, 1968. — February 3, 1969.

Present: WILKINS, C.J., CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Religion. Jurisdiction,* Ecclesiastical controversy, Justiciable question. *Corporation,* Members, By-laws, Religious corporation.

The proper interpretation of the by-laws of a Massachusetts religious organization constituting a contract between it and its members was a justiciable question and not merely one of an ecclesiastical nature. [282]
There was no merit in a contention that the Bishop of a religious organization had to be chosen according to "canon law" and not according

to the by-laws of the organization, where the by-laws provided that the members of the council of the organization, of whom the Bishop was one, should "hold office until their successors . . . [were] duly elected as provided under the by-laws," that if the Bishop should be unable to act the secretary of the organization should be "the acting Bishop until the selection of a succeeding Bishop by a special convention [in the organization] to be called to select a permanent acting Bishop," and that candidates "for the Bishopric" should be approved by certain delegates of the convention and "a bishop" thereupon elected. [282–283]

In the circumstances, a provision of the final decree in a suit in equity directing an officer of a religious organization to call a meeting of the council thereof did not constitute judicial interference in a merely ecclesiastical matter, and was proper notwithstanding a purported resignation of that officer where it appeared that he had continued to act as such thereafter. [283] KIRK, J., dissenting.

BILL IN EQUITY filed in the Superior Court on June 7, 1965.

The suit was heard on the merits by *Beaudreau,* J.

*Harvey A. Silverglate* for the defendants.

*Nathan Robins* (*Samuel H. Lewis* with him) for the plaintiffs.

SPIEGEL, J.  This is a bill in equity brought by four members of the Albanian Orthodox Diocese in America, Inc. (Diocese), as representatives of all of the members of the Diocese, against the Diocese and four of its officers. The plaintiffs allege that the individual defendants "have devised a scheme and entered into a conspiracy to perpetuate themselves in office, to deprive the plaintiffs and other regular members of the Diocese of the right to vote, [and] to foist upon The Diocese as Bishop, the defendant, Stephen Lasko," all in derogation of the by-laws of the Diocese.

The defendants appealed from an interlocutory decree overruling their demurrer to the bill and from a final decree determining which members of the Diocese are entitled to vote at its annual meeting and ordering the calling of a meeting of the Diocesan Council.  The judge filed "Amended Findings of Fact, Rulings of Law, and Order for Decree" which he adopted as a report of material facts.  The evidence is reported.

We summarize the judge's findings. The Diocese is a religious corporation organized in 1956 under G. L. c. 180. Comprised of eleven churches located throughout the United States the Diocese serves "persons of Albanian descent or origin in the United States in their religious devotions in accordance with the Eastern Orthodox rites, customs, and traditions."

Four days after its organization, the Diocese "acting through its members, duly adopted . . . a code of by-laws." The by-laws extended regular membership in the Diocese to charter members, "the Bishop for the time being," present members and "any Albanian or person of Albanian descent or origin or who has intermarried with an Albanian or person of Albanian descent or origin who is received and elected to membership." In order to "qualify" for regular membership, one has to subscribe to the by-laws and sign a membership roll.

The by-laws provide for the payment by regular members of annual dues. A member who is in arrears in the payment of these dues is "subject to having his name stricken from the membership roll by the Diocesan Council." Notice is to be sent to members in arrears and "if the arrears are not paid within thirty days after such notice is sent, the name of the member in arrears may be stricken from the roll." The membership roll is declared to be "prima facie evidence" of regular membership in the Diocese.

The governing structure provided by the by-laws for the operation of the Diocese consists of the bishop, the Diocesan Council of which the bishop is the chairman, an annual meeting of the regular members and an annual convention. The members of the Diocesan Council are the "Bishop or the time being, . . . a Lay Vice-Chairman, a Clerical Secretary, a Lay Treasurer and a Lay Comptroller, four delegates elected by the [regular] members [at their annual meeting] and four delegates elected by the Convention, each clergyman . . . and each Chairman of the Board of Trustees of an affiliated church." They are to "hold office until their successors are duly elected as provided

under the by-laws." Should the bishop be "unable to act or officiate by reason of sickness, disability or other cause, the secretary of the Diocese shall be the acting Bishop until the selection of a succeeding Bishop by a special Convention to be called to select a permanent acting Bishop." At the annual convention held in 1959 the by-laws were amended to provide that " '[c]andidates for the Bishopric must be approved first by the Lay delegates of the Convention by a two-thirds ($\frac{2}{3}$) majority vote. The candidate(s) who receive the $\frac{2}{3}$ vote of the lay delegates are then submitted to the convention of the Clergy who have the right to elect a bishop by two-thirds ($\frac{2}{3}$) majority vote. . . . ' "

In addition to electing four members of the Diocesan Council, the regular members at their annual meeting elect four delegates to the annual convention. Both the annual meeting and convention are to be called by the Diocesan Council.

Bishop Fan S. Noli was the "highest ranking officer" of the Diocese at the time of its organization and retained that position until his death on March 13, 1965. At that time the defendant Sotir Dilogika was the secretary of the Diocese and became the "acting bishop" as provided by the by-laws. He called an "extraordinary meeting" of the Diocesan Council for March 17, 1965, to prepare plans for the official interment of Bishop Noli. The defendant Stephen Lasko, although a member of the council, did not attend this meeting as he was in Albania. Dilogika called another extraordinary meeting of the council for March 26, 1965, to hear a report of Lasko, who had returned from Albania. Lasko's report was that he had been consecrated a bishop while in Albania. Subsequent to this meeting the individual defendants formed an "Executive Committee" and as such called an annual meeting of the regular members. One hundred and fifteen persons, including the plaintiffs, whose names "were never stricken from the membership roll by action of the diocesan council, and were at the time active regular members" did not receive notice of

the meeting. There was no evidence that a special convention was called to select a "permanent acting bishop." The last annual meeting of the regular members was held in 1963.

We proceed directly to the merits. *Walcott* v. *Cambridge,* 351 Mass. 32, 33. *James J. Derba, Inc.* v. *Hamilton Serv. Inc. ante,* 127.

It is the law of this jurisdiction that the courts do not interfere in a controversy that is exclusively or primarily of an ecclesiastical nature. Where civil or property rights or the construction of legal instruments are involved, however, the courts have been "less reluctant to interfere." *United Kosher Butchers Assn.* v. *Associated Synagogues of Greater Boston, Inc.* 349 Mass. 595, 598. We perceive the dispute now before us not as one of church law (see *Solomon* v. *Congregation Tiffereth Israel of Revere,* 344 Mass. 755), but one of contract law (see *Kubilius* v. *Hawes Unitarian Congregational Church,* 322 Mass. 638). We only interpret the by-laws of a Massachusetts corporation which constitute a contract between the members and the Diocese. *Kubilius* v. *Hawes Unitarian Congregational Church, supra,* at 644.

The defendants contend that the bishop on whom great powers are bestowed by the by-laws is to be chosen according to "Canon Law" and not according to the by-laws. They argue that once a bishop has been consecrated there is no need to elect a "permanent acting Bishop" as provided by the by-laws.

The question whether the defendant Lasko is a bishop in the Albanian Orthodox Church is not before us.[1] The question we are to answer is whether proper action has been taken under the by-laws. Members of the council are to "hold office until their successors are duly elected *as provided under the by-laws*" (emphasis supplied). The by-laws provide for "the selection of a *succeeding* Bishop by a special Convention to be called to select a permanent acting Bishop" (emphasis supplied). The amendment of 1959 provided for

---

[1] The plaintiffs in their brief state, "We are not primarily concerned with who is . . . the Bishop, nor are we concerned with whether . . . the defendant Lasko was ordained or consecrated a Bishop."

the approval of candidates "for the Bishopric" and for the election of "a bishop." We do not think that one inconsistent phrase ("permanent acting") in a document which is "wanting in clarity" should be permitted to overshadow provisions clearly indicating that the successor to Bishop Noli is to be chosen as provided by the by-laws. The by-laws provide for the secretary of the Diocese to be the acting bishop until a successor is selected. We do not believe that such an elaborate procedure as the one provided for the election of a "permanent acting bishop" was intended merely to select a temporary holder of the position.

The defendants do not challenge that part of the final decree determining which members are entitled to vote. They contest in only two respects that portion of the decree ordering the defendant Dilogika to call a meeting of the Diocesan Council. In light of the above discussion we need not consider the contention that the sole purpose of the meeting was to provide for the election of a bishop, and thus the order infringed on ecclesiastical matters. The next contention is that, since Dilogika resigned as secretary of the Diocese for reasons "personally ecclesiastical," he is no longer acting bishop and cannot be required to perform the duties of that office. This, however, ignores certain essential facts. After the resignation Dilogika continued to act as secretary and called an "extraordinary meeting" on March 17, 1965. This meeting was attended by the defendants and certain actions were taken at that meeting. On March 24, 1965, Dilogika by telegram called for another "extraordinary meeting" to be held on March 26, 1965. This meeting also took place and was attended and participated in by the defendants.

We are of opinion that the judge was correct in ordering Dilogika to call a meeting of the council. We have before us no question of church doctrine or departure from doctrine such as was considered recently in *Presbyterian Church in the United States* v. *Mary Elizabeth Blue Hull Memorial Presbyterian Church*, 393 U. S. 440.

*Decrees affirmed.*

KIRK, J. (dissenting) If the opinion did indeed "only interpret the by-laws of a Massachusetts corporation which constitute a contract between the members and the Diocese," I would agree with it. But it does more. It orders the resigned secretary of the Diocese, an ordained clergyman, to comply with the court's interpretation of the by-laws. The resigned secretary, it appears, feels duty bound under Canon Law to recognize Stephen Lasko as Bishop. The court's order to the resigned secretary, it seems to me, (a) is an infringement of his right to be free from direction by civil authority as to how he should act on religious or ecclesiastical matters; and (b) constitutes interference in a controversy which is essentially ecclesiastical in nature. I think the court should stay away from it.