ANN WHEELER & others *vs.* ROMAN CATHOLIC ARCHDIOCESE OF BOSTON & others.

Plymouth. April 5, 1979. — May 10, 1979.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, LIACOS, & ABRAMS, JJ.

*Religion. Jurisdiction,* Ecclesiastical controversy. *Constitutional Law,* Freedom of religion.

The First Amendment to the United States Constitution required dismissal of a complaint by parishioners of a Roman Catholic Church against the Roman Catholic Archdiocese of Boston seeking to impose a trust on certain land conveyed to the Roman Catholic Archbishop of Boston where there was uncontroverted evidence that the church was hierarchical, that it maintained a tribunal for the resolution of controversies of this nature, and that the plaintiffs asserted their claims as members of the church. [61-64]

CIVIL ACTION commenced in the Superior Court on March 21, 1978.

A motion to dismiss was heard by *Hayes,* J., a District Court judge sitting under statutory authority.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*William J. Clary* for the plaintiffs.
*James G. Dolan, Jr.,* for the defendants.

HENNESSEY, C.J. The complaint in this case was brought by parishioners of St. Mary's of the Nativity, a Roman Catholic church in Scituate, seeking to impose a trust on certain land conveyed to the Roman Catholic Archbishop of Boston. The defendants filed a motion to dismiss the complaint under Mass. R. Civ. P. 12(b), 365 Mass. 754 (1974). They also filed an affidavit of the Most Reverend Thomas V. Daily, D.D., who is an auxiliary bishop, chancellor, and vicar general of the Archdiocese of Boston. No counter affidavits were filed by the plaintiffs. A District Court judge, sitting by statutory authority in the Superior Court, dismissed the complaint after hearing. The plaintiffs appealed.

No reasons were given in the judge's order of dismissal, and the parties on appeal have treated the dismissal as granted under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), for failure of the complaint to state a claim on which relief can be granted. Since there was an affidavit on file as well as the complaint, it seems clear to us that the judge treated the motion to dismiss as a motion for summary judgment. It is appropriate for us to consider the case in that light, and we do so. Mass. R. Civ. P. 12 (c), 365 Mass. 754 (1974).

There was no error. The Constitution of the United States requires dismissal of the complaint. We summarize the facts from the complaint, and from Bishop Dailey's uncontroverted affidavit. The plaintiffs are Scituate residents and members of St. Mary's of the Nativity Parish (St. Mary's). St. Mary's was established in 1921 as an unincorporated subdivision of the Archdiocese of Boston. The Archdiocese itself is a purely ecclesiastical entity of the Roman Catholic church, having no separate legal existence, and exists to minister to the members of the Catholic faith within its geographic jurisdiction. All real estate within the parish of St. Mary's, including, until August 4, 1977, the vacant land which is the subject of this controversy, is owned by the Archbishop of Boston, a corporation sole. Archdiocesan property is held subject to St. 1897, c. 506.

The Archdiocese of Boston is part of the Roman Catholic Church, an episcopal church which is hierarchical in nature. It shares an identical faith and doctrine with other Catholic churches throughout the world and all these churches look to the Pope in Rome as their ultimate earthly authority. The Roman Catholic Archbishop of Boston administers the Archdiocese both directly and through a number of boards and tribunals which are quasi legislative or quasi judicial in character. The Archbishop is in turn subject to higher ecclesiastical authorities in the church. These authorities also include quasi legislative and quasi judicial bodies. Under canon law, members of the Roman Catholic church, both lay and clerical, who are aggrieved by any action of their Ordinary (the Archbishop) should seek redress through the Archdiocesan judicial system, particularly the ecclesiastical court of the Archdiocese, the Metropolitan Tribunal. To date, none of the plaintiffs or any other members of St. Mary's parish have brought any proceeding in the ecclesiastical judicial system.

During the 1930's and 1940's, the plaintiff parishioners and other parishioners contributed extra and substantial sums to St. Mary's with the intent of purchasing the subject locus, a vacant area of land on the corner of Stockbridge Road and Meeting House Lane, Scituate. The purpose of this acquisition, as stated by the priests of St. Mary's and as understood by the parishioners, was to establish a cemetery for the parishioners.

On May 24, 1939, the subject property was purchased by the Archbishop, a corporation sole, for approximately $2,000. This $2,000 was the money contributed by the parishioners. The deed contains no restrictions or other indications as to its proposed use. The land was vacant at that time and remains so today. At the 1939 Scituate town meeting, the board of health was authorized "to grant a permit for the extension of St. Mary's cemetery to include land on Meeting House Lane and Stockbridge road." On October 2, 1939, and again in later years, parishioners were buried in St. Mary's Cemetery.[1]

---

[1] Although the defendants, for purposes of their motion to dismiss,

In August of 1972, the Archbishop of Boston decided to undertake an Archdiocesan housing program to consist of the construction of low and moderate income multifamily housing units. To this end, the Archbishop on August 4, 1977, conveyed the subject land to the Planning Office for Urban Affairs, Inc., a corporation organized by the Archbishop under G. L. c. 180 to undertake this type of activity.

The plaintiffs argue that the parcel of land has been impressed with a parol trust, with the beneficial enjoyment of that trust secured in the parishioners of St. Mary's, citing *Bailey* v. *Wood*, 211 Mass. 37, 42 (1912), and *Metropolitan Life Ins. Co.* v. *Pollack*, 332 Mass. 582, 583 (1955). In the alternative, they argue that a resulting trust should be recognized for the beneficial enjoyment of the parishioners, citing *Howe* v. *Howe*, 199 Mass. 598, 600-601 (1908), *Meskell* v. *Meskell*, 355 Mass. 148, 150 (1969), and *Murphy* v. *McKenzie*, 1 Mass. App. Ct. 553, 555 (1973).

As we have stated above, the Constitution of the United States requires dismissal of the complaint. The First Amendment, applicable to the States through the Fourteenth Amendment, permits hierarchical religious organizations to establish their own rules and regulations for internal discipline and government, and to create tribunals for adjudicating disputes over these matters. *Serbian E. Orthodox Diocese* v. *Milivojevich*, 426 U.S. 696, 724, reh. denied, 429 U.S. 873 (1976). Indeed, State governments, like the Federal government, are required to refrain from involving themselves in ecclesiastical af-

---

concede that several parishioners were buried upon the land which is the subject of this action, it is plain from the defendants' brief and argument that their ultimate position would be that these burials took place in the presently existing St. Mary's Cemetery, which is a locus separate from the one here concerned. The single "record of death" attached to the complaint shows burial merely at "St. Mary's" Cemetery.

fairs or controversies. *Id.* See *McDaniel* v. *Paty,* 435 U.S. 618, 638 (1978) (Brennan, J., concurring). Thus, in our view, the relevant issues for the court's determination in this proceeding for summary judgment are whether the Roman Catholic Church is a hierarchical church, whether that church maintains a tribunal for the resolution of controversies of this nature, and whether the plaintiffs assert their claims as members of that church. All three matters are uncontroverted: a competent church tribunal exists and has been identified; the plaintiffs assert their rights as members of a Roman Catholic parish; and the Roman Catholic church is hierarchical, since its local parishioners are not intended to be self-governing.[2] It follows that the complaint was properly dismissed.[3]

The plaintiffs particularly argue that their case is not "purely ecclesiastical" in nature, but instead involves a property dispute of which the courts should take cognizance. They rely especially on *Gorodetzer* v. *Kraft,* 360 Mass. 743 (1972), and *Mitchell* v. *Albanian Orthodox Diocese in America, Inc.,* 355 Mass. 278 (1969), in both of

[2] There are at least three kinds of internal church structures, or polity, which may be discerned: congregational, presbyterial, and episcopal. "In the congregational form, each local congregation is self-governing. The presbyterial polities are representative, authority being exercised by laymen and ministers organized in an ascending succession of judicatories — presbytery over the session of the local church, synod over presbytery, and general assembly over all. In the episcopal form power reposes in clerical superiors, such as bishops. Roughly, presbyterial and episcopal polities may be considered hierarchical, as opposed to congregational polities, in which the autonomy of the local congregation is the central principle." Note, Judicial Intervention in Disputes over the Use of Church Property, 75 Harv. L. Rev. 1142, 1143-1144 (1962). Accordingly, whether or not a given church is hierarchical is a question of fact. See *Kelley* v. *Riverside Boulevard Independent Church of God,* 44 Ill. App. 3d 673 (1976); *State ex rel. Morrow* v. *Hill,* 51 Ohio St. 2d 74 (1977).

[3] We express no opinion whether, if the hierarchical church had no ecclesiastical tribunal, it would then be appropriate for the civil courts to take jurisdiction.

which this court decided that there were justiciable controversies. The plaintiffs' view is that the courts should take jurisdiction where the case essentially concerns a property interest, trust relation, or personal, contractual, or tortious rights of the parties. See *Moustakis* v. *Hellenic Orthodox Soc'y,* 261 Mass. 462, 465 (1928).

Our view is more restrained. "Even when rival church factions seek resolution of a church property dispute in the civil courts there is substantial danger that the State will become entangled in essentially religious controversies or intervene on behalf of groups espousing particular doctrinal beliefs." *Serbian E. Orthodox Diocese* v. *Milivojevich, supra* at 709. Thus, "the First Amendment severely circumscribes the role that civil courts may play in resolving church property disputes." *Presbyterian Church* v. *Mary Elizabeth Blue Hull Memorial Presbyterian Church,* 393 U.S. 440, 449 (1969). In the circumstances of the instant case, that language is persuasive. The *Gorodetzer* case, *supra,* relied on by the plaintiffs, concerned a claim by a kosher caterer against a member and officer of a religious congregation, for an alleged libel which occurred after the plaintiff had resigned from the congregation. Thus it did not involve a dispute between members or factions of a church. In the *Mitchell* case, *supra,* also relied on by the plaintiffs, it is far from clear that a hierarchical church was concerned.[4] Further, our words in these and other cases (cf. *Moustakis* v. *Hellenic Orthodox Soc'y, supra* at 467) suggesting generally that the courts should be less reluctant to intervene in cases involving property rights or personal rights were written before the teachings of more recent relevant Supreme Court opinions, particularly *Serbian E. Orthodox Diocese,* were available.

---

[4] Kirk, J., dissenting from this court's decision in *Mitchell* that the courts should take jurisdiction in the case, stated: "I think the court should stay away from it." *Id.* at 284.

We have also said that, even apart from any constitutional considerations, we believe that sound policy dictates that the denominations, and not the courts, interpret their own body of church polity. *Gorodetzer* v. *Kraft, supra* at 745.[5]

The plaintiffs, if they are to be heard on the merits of this controversy, must have recourse to the ecclesiastical system. The ultimate result of any such proceeding will not be reviewable in the civil courts. In the circumstances of this case, the Constitution requires that the civil courts accept the decision of the ecclesiastical tribunal as binding on them. *Serbian E. Orthodox Diocese* v. *Milivojevich, supra* at 725.

*Judgment affirmed.*

---

[5] The approach in some cases has not been by constitutional reasoning. In *Serbian E. Orthodox Diocese* v. *Milivojevich*, 426 U.S. 696, 732 note, reh. denied, 429 U.S. 873 (1976), Mr. Justice Rehnquist, dissenting (joined by Mr. Justice Stevens), suggested that the constitutional issues had not been reached in some church cases, since they were "applications of the general principle that persons who have contractually bound themselves to adhere to the decisions of the ruling hierarchy in a private association may not obtain relief from those decisions in a civil court." See, e.g., *Bouldin* v. *Alexander*, 82 U.S. (15 Wall.) 131 (1872); *Watson* v. *Jones*, 80 U.S. (13 Wall.) 679 (1871).