Connolly, J.
This civil action was filed on August 27, 2004, and an order of notice was issued to the defendant, Roman Catholic Archbishop of Boston, a corporation sole for a hearing to be held on the Plaintiffs’ Motion for Preliminary Injunction on Wednesday, September 8, 2004, which hearing was held on that date.
The plaintiffs are moving that the Court enter a preliminary injunction ordering and enjoining the defendant from liquidating, transferring, converting, disbursing, securing expending, alienating, conveying or otherwise modifying the moneys, real estate and all personal property allegedly held in the name of, or held for the benefit of, or held in trust for St. Albert the Great Church in Weymouth, Massachusetts.
The plaintiffs are members of the Parish Council, the Finance Committee and/or members of the St. Albert The Great Church and Parish in Weymouth. Basically they are attempting to stop the “suppression” (ie, its closure) of their Church and Parish by the Diocesan Archbishop Sean Patrick O’Malley. Archbishop O’Malley is attempting to accomplish a “reconfiguration of the Archdiocese,” due to numerous serious problems that the Archdiocesan is now facing. The plaintiffs are seeking a preliminary injunction to prohibit the defendant from selling, etc, the church grounds, the church, the items of furniture, the religious items, and the money raised by the Parish. The plaintiffs allege that there is or was over $200,000 in the Parish accounts, which was raised from the Parish members for the Parish’s use.
The legal standard by which the issuance of a preliminary injunction is governed is contained in Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 716-17 (1980), wherein it is stated:
Therefore, when asked to grant a preliminary injunction, the judge initially evaluates in combination the moving party’s claim of [harm] and chance of success on the merits. If the judge is convinced that failure to issue the injunction would subject the moving party to a substantial risk of irreparable harm, the judge must then balance this risk against any similar risk or irreparable harm which granting the injunction would create for the opposing party. What matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party’s chance of success on the merits. Only when the balance between these risks cut in favor of the moving party may a preliminary injunction properly issue.
“Since the goal is to minimize the risk of irreparable harm, if the moving party can demonstrate both that the requested relief is necessary to prevent irreparable harm to it and that granting the injunction poses no substantial risk of such harm to the opposing party, a substantial possibly of success on the merits warrants issuing the injunction.” Packaging Ind. Group, Inc., supra at 617, n.12. The burden of proof here is upon the plaintiffs to show the reasons why a preliminary injunction should issue. The role of the judge “is to balance the risk of irreparable ham to the plaintiff and defendant in light of each party’s chance of success on the merits. Only where the balance between these risks cut in favor of the moving party may a preliminary injunction properly issue.” Packaging Ind. Group, Inc. supra at 616-17, or, in other words “an injunction may issue only if a judge concludes that the risk of irreparable harm to the plaintiffs, in light of their chances of success on their claim, outweigh the defendant’s probable harm and likelihood of prevailing on the merits of the case." Comm. v. Mass. CRINC, 392 Mass. 79, 87-88 (1984).
1. Irreparable Harm to the Plaintiffs and Defendant
Saint Albert the Great Church and Parish has been a thriving and vibrant parish, with its members actively involved in its affairs. It has been self-supporting and in fact has or did have bank accounts over $200,000. It was founded in 1950. A church and parish play an extremely important role in a parishioner’s life. Some have been baptized there, married there, and have had their parent’s funeral Masses there. Basically, the role of a parish and church in a parishioner’s life is far more than a simple piece of property. It becomes a very important part of the life of its parishioners, spiritually, intellectually, and emotionally.
The plaintiffs have shown that great irreparable harm will be suffered by the plaintiffs from the closing of their church. On the other hand, the Archdiocese *318 says that it must close many churches because of insufficient number of priests to staff them, lower attendance at Mass, and several financial problems. Saint Albert the Great is one of four parishes in Weymouth and is the only one that does not have a school. The Church indicates that it has complied with the spirit and letter of Canon Law in the closing of the parish. The closing of a church and parish is a matter of judgment for the Archbishop to make, which this Court may not second' guess. In fact, the plaintiffs appealed under Canon Law the initial decision to close the Church, which appeal was denied. The plaintiffs .now have the opportunity to appeal further under Canon Law to the higher authority within the Church. The Roman Catholic Church is governed by Canon Law and is hierarchical in structure. This Court finds that the entry of the requested preliminary injunction against the Church will cause serious problems, but nothing of the magnitude of the irreparable harm to be suffered by the Plaintiffs.
2. The Plaintiffs’ and the Defendant’s Respective Chances of Success on the Merits
Here, the land and the church building are owned by the Roman Catholic Archbishop of Boston. The bank accounts of the parish, which involve over $200,000, are in the name of the parish. The parish is not a separate corporation, but is a part of the Archdiocese of Boston, corporation sole. All property and funds were therefore in the custody or control of the Archdiocese by its agent, the Pastor of Saint Albert the Great Parish.
The plaintiffs claim an equitable interest in the Church, and its contents, the land on which its sits and the money being held in the parish bank accounts. They allege that chapter 67, §§44-45 provides that the Archdiocese was holding funds and property for the benefit of the parish of Saint Albert the Great. However, the Roman Catholic Archbishop of Boston, a corporation sole, was not organized under chapter 67, §§44-45. Or, as stated in Zani v. Phandor Co., 281 Mass. 139, 145 (1932), the Roman Catholic Archbishop of Boston is a corporation sole and not a corporation aggregate. “It is plain that the named trustee [Roman Catholic Archdiocese of Boston] is a corporation of a different nature from those incorporated under chapter 67, §44.” Id., at 145. Saint Albert the Great’s Church and Parish (including its real estate and its personalty) is an unincorporated subdivision of the Archdiocese of Boston. See: Wheeler v. Roman Catholic Archdiocese, 378 Mass. 58, 59-60, cert. denied, 444 U.S. 899 (1997); Antioch Temple v. Parekh, 383 Mass. 854, 863, n.12 (1981).
Although the plaintiffs’ counsel did not raise the issue, any equitable claims based on a resulting trust or a constructive trust have no application under the facts of this case. There simply is no evidence here to warrant a finding of a resulting trust in real estate. “A resulting trust in real estate arises where one party furnishes the consideration to purchase property, not intending a gift or advancement, yet title is taken in the name of the other ... A resulting trust must arise, if at all at the time of the execution of the deed.” Fortin v. Roman Catholic Bishop of Worcester, 416 Mass. 781, 789 (1994). Likewise, there is no evidence sufficient to warrant a finding of a constructive trust. “Under Massachusetts law, a Court will declare a party a constructive trustee of property for the benefit of another if he acquired the property though fraud, mistake, breach of duty, or in circumstances indicating that he could be unjustly enriched. Here, there is no evidence of wrongdoing or unjust enrichment.” Fortin, supra at 789-90. Therefore, a finding of a constructive trust would not be warranted.
This Court has not dealt with the jurisdictional issue, namely that “the First Amendment prohibits civil courts from intervening in disputes concerning religious doctrine, discipline, faith or internal organization.” Alberts v. Devine, 395 Mass. 59, 72 (1985). “The First Amendment severely circumscribes the role that civil courts may play in resolving church property disputes.” Wheeler v. Roman Catholic Archdiocese of Boston, 378 Mass. 58, 63 (1979). In the case of James v. Wolf, 443 U.S. 595, 602-03 (1979), the Supreme Court held that states are constitutionally entitled to adapt “neutral principles of law” to resolve church property disputes. “Thus, if the dispute can be resolved without inquiry into matters of religious doctrines or policy, a court may examine such sources as (a) statutory provisions governing the holding of property by religious corporations; (b) the constitutions and by-laws of the religious organizations involved especially in so far as they pertain to the ownership and control of church property, and (c) the deeds to the property in question to resolve the dispute.” Antioch Temple, Inc. v. Parekh, 383 Mass. 854, 867 (1981), citing Jones v. Wolfe, 443 U.S. 595, 602 (1979). In Jones v. Wolfe, id., the Supreme Court indicated that the States are constitutionally entitled to adopt “neutral principles of law” to resolve church property disputes. Id. at 602-03. In Fortin v. Roman Catholic Bishop of Worcester, supra at 787, the Supreme Judicial Court adopted this neutral principle approach for purposes of that case. There is no need to decide this jurisdictional issue or the issue between hierarchal and congregational church structures in determining whether jurisdiction exists for this Motion for Preliminary Injunction. Because the facts and result appear to be reasonably clear on a “neutral principles of law” approach, this Court does not believe it necessary to discuss or decide those issues for purposes of this motion.
This Court finds that the plaintiffs have no substantial possibility of success on the merits of this case.[1]
ORDER
The plaintiffs’ Motion for a Preliminary Restraining Order is DENIED.

 In making this finding, the Court fully appreciates the hurt and loss suffered by the plaintiffs. Prescinding from any claim under chapter 67, §44-45 which has been dealt with above, this case involves Archbishop Sean O’Malley making the difficult decision to close their parish. This Court simply *319 is prohibited by the First Amendment to the United States Constitution from involving itself in such a dispute between members of the Church.