Moriartv, Cornelius J., J.
Introduction
On October 4, 2011, the plaintiff, Roman Catholic Bishop of Springfield, filed suit against the defendant parishioners who have been maintaining a 24-hour prayer vigil at Mater Dolorosa Church in Holyoke, Massachusetts, since June 2011. The parishioners have maintained this prayer vigil since the final public Mass was held, and after announcement that the parish and church would be closed and merged with another parish. The verified complaint states an action for trespass to land (Count I) and an action to abate trespass (Count II). The defendants counterclaimed, alleging civil rights violations under the U.S. and Massachusetts Constitutions (Count I); fraud, misrepresentation, and breach of fiduciary duty (Count II); and breach of fiduciary duty—failure to produce financial statements (Count III).
Now before the court is the plaintiffs motion for summary judgment as to its claims as well as the defendants’ counterclaims. The defendants have cross moved for summary judgment as to the plaintiffs claims for trespass. After hearing and review of applicable law and the parties’ submissions, the plaintiffs motion will be allowed in part and denied in part, as more fully set forth herein, and the defendants’ motion will be allowed to the extent that the plaintiffs trespass claims will be dismissed.
FACTUAL BACKGROUND
The Mater Dolorosa Parish was established in 1896, and the Mater Dolorosa Church (“Mater Dolorosa”), in Holyoke, Massachusetts, was built in 1902. In 2011, the plaintiff, Roman Catholic Bishop of Springfield (the “Bishop”), issued a decree closing both the parish and the church, and merging the parish community with that of the Holy Cross Parish in Holyoke. The newly merged parish was named Our Lady of the Cross Parish. The last public Mass at Mater Dolorosa was celebrated on June 30, 2011. The defendants are former (and claim to be current) parishioners of Mater Dolorosa. The defendants have submitted affidavits indicating that they were required to and did pay regular dues in order to be church members, and that they have appealed the closing/merger of Mater Dolorosa to the Congregation for Clergy in Rome, Italy (Protocol No. 20112390, filed on September 29,2011).[2] The parishioners’ appeal to Rome remains unresolved.
It is disputed whether the Bishop lawfully holds status as a coxporation sole pursuant to Chapter 368 of the Acts of the General Court of 1898. The defendants assert that the Bishop is not entitled to the status of corporation sole due to his failure to follow the Act’s filing mandates. Because this case may be decided on other *147 grounds, as set forth in the discussion, infra, the court will assume, for the purposes of summaiy judgment only, that the Bishop is a legal corporation sole pursuant to the Act. The defendants do not contest, however, that the Bishop, when lawfully holding the status of corporate sole, is the legal entity through which the Roman Catholic Diocese of Springfield (the “Diocese”) exercises its religious mission in the four western Massachusetts counties of Hampden, Hampshire, Franklin, and Berkshire. The Bishop is the owner of the real estate which includes Mater Dolorosa.[3]
Following the Mass held on June 30, 2011, several of the defendants remained in the church for prayer vigil, and others subsequently joined them. During the pendency of their appeal to Rome, parishioners of Mater Dolorosa have maintained a continuous prayer vigil at the church. The defendants assert that they, as paid church members, “are conducting a peaceful, continuous prayer vigil in their parish church for the care and protection of their church while their appeal is pending in Rome ...”
Although the Bishop asserts that the defendants were told to leave the church orally, the defendants offer several affidavits indicating that they were never instructed to leave the church, and that they, in fact, reached an agreement with Mater Dolorosa’s pastor on June 30 to pay reasonable electric and water bills of the church while they remained in 24-hour vigil. The Bishop offers two documents it characterizes as “no trespass” notices that were allegedly given to the defendants on July 8 and September 23, 2011, as evidence that the defendants were on notice to leave the premises. The defendants, however, argue that one of the notices had nothing to do with trespass, and that the other is defective on its face as a “no trespass” notice (without explaining why the notice is defective). The defendants further aver, through several affidavits, that neither of the purported notices were actually given to any of the defendants. I note that the Bishop offers no evidence regarding where the notices were placed, how many of them were placed, or whether any of the defendants were personally given the notices. The first notice is, on its face, predominantly a safely warning regarding alleged “structural deficiencies,” although it does contain an admonition that “the owner has not given permission for anyone other than its authorized representatives to be on the premises because of this risk of injuiy.” It warns that unauthorized persons on the premises are risking their personal safely. The second notice is titled “No Trespassing Notice” and states that anyone entering or staying in the building without the written permission of the owner is in violation of G.L.c. 120, §120.[4]
To date, the defendants remain in 24-hour prayer vigil at Mater Dolorosa.
DISCUSSION
On summaiy judgment review, the court examines “whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law.” Augat, Inc. v. Liberty Mut Ins. Co., 410 Mass. 117, 120 (1991), citing Mass.RCiv.R 56(c).[5] The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and its entitlement to judgment as a matter of law. See Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once the moving party establishes the absence of a triable issue, the parly opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Id. The opposing party may not rest on the allegations in the pleadings. Key Capital Corp. v. M&S Liquidating Corp., 27 Mass.App.Ct. 721, 728 (1989). Additionally, mere contradictions of factual allegations, without evidentiary support, are insufficient to raise a question of material fact sufficient to defeat a summaiy judgment motion. Madsenv. Erwin, 395 Mass. 715, 721 (1985). Here, both parties have moved for summaiy judgment as to the plaintiffs trespass claims, and the plaintiff has moved for summaiy judgment as to the defendants’ counterclaims.
Regarding the materials submitted by the parties in support of their motions for summaiy judgment, I note the following: Although the defendants cite to their memorandum in opposition to a preliminary injunction as well as their answer and counterclaim as support for several of their factual disputes or assertions, the court cannot rely upon unverified pleadings and factual assertions in memoranda of law that lack support in the summaiy judgment record to determine whether there are genuine issues of material fact precluding summaiy judgment. “Allegations in an unverified pleading are not accorded any evidentiary weight in determining whether there exists a genuine issue of material fact under rule 56(c).” Godbout v. Cousens, 396 Mass. 254, 262, 263 (1985) (“Only if the plaintiff files a verified complaint is the complaint treated as an affidavit for purposes of rule 56(e)).” Furthermore, several of the defendants’ affidavits, particularly those of counsel who is also a named defendant, contain numerous conclusions of law. “It is not the function of an affidavit to bring a legal argument before the trial court. That is the function of a memorandum of law.” Lewis v. Antelman, 10 Mass.App.Ct. 221, 227 (1980), citing Mass.R.Civ.P. 56(e). The court has, therefore, disregarded such legal arguments and unverified statements, and focused exclusively on admissible evidence and statements of personal knowledge contained in the affidavits.
I. Trespass (Complaint Counts I and II)
The defendants raise a jurisdictional challenge to the plaintiffs trespass claims, arguing that because they have an appeal of the church closing pending before a church tribunal, this court lacks authority to decide upon the trespass claims. Alternatively, the defendants submitted a provision of canon law, by way of affidavit from an ordained priest and canon lawyer with a doctorate in canon law, stating that Canon 1214 provides as follows: “By term church is understood a sacred building designated for divine worship to which the faithful have *148 the right of entry for the exercise, especially the public exercise, of divine worship.” The defendants argue that this provision grants them a right of entry and, therefore, a right to remain in their prayer vigil.
The Bishop urges that jurisdiction is properly before this court, arguing that the court is required to take a “neutral principles of law” approach in analyzing its claims. The Bishop, therefore, requests that this court pretend that canon law does not exist for the purpose of analyzing whether the defendants are trespassers. There are at least two flaws in this position: (1) the law of trespass necessarily requires an examination of whether the alleged trespasser possesses a right of entry; and (2) contrary to the Bishop’s assertion, the court is not “required” to take a neutral principles of law approach but, rather, may do so when analysis of the claims before it would not necessitate inquiry into religious doctrine or policy. See Fortin v. Roman Catholic Bishop of Worcester, 416 Mass. 781, 786 (1994). Indeed, the Supreme Judicial Court noted in Fortin that it had not previously chosen to exclusively adopt the neutral principles approach, and declined to rule that such an approach would be required in the future. Id. at 787. Additionally, the Supreme Judicial Court has declined jurisdiction because of the existence of canon law and the Roman Catholic Church’s system of internal governance and dispute resolution, and in the process, it acknowledged and cited to relevant provisions of canon law. See, e.g., Hiles v. Episcopal Diocese of Massachusetts, 437 Mass. 505, 517 (2002) (“Moreover, Title IV, Canon 14, §1, provides in part that ‘clergy who have voluntarily sought and accepted ordination in the Church have given their express consent and subjected themselves to the discipline of this Church and may not claim in proceedings under this Title constitutional guarantees afforded citizens in other contexts.’ A minister’s consent to disciplinary proceedings historically has been a prominent reason for courts to decline to exercise jurisdiction over a dispute on First Amendment grounds”). The Hiles court, therefore, recognized the existence and authority of canon law over the dispute at issue.
With regards to the law of trespass, common law provides that in the tort context,
A trespasser has been defined as “a person who enters or remains upon land in the possession of another without a privilege to do so, created by the possessor’s consent or otherwise.” The precise dividing line between a trespasser and a nontrespasser for common law tort liability purposes has not been defined in Massachusetts. Generally, whether one is a trespasser depends upon the consent of the owner... An owner’s passive acquiescence in continued use of his properly by members of the public, absent any reasonably effective steps to discourage such use, might create in some individuals a reasonable belief that the owner consented to such use. In that situation, the user might not be a trespasser.
Gage v. Westfield, 26 Mass.App.Ct. 681, 695 n.8 (1988), rev. denied, by 404 Mass. 1103 (1989) (internal citations omitted), quoting Restatement (Second) of Torts, §329 (1965). Criminal trespass, in turn, is defined as follows: “Whoever, without right enters or remains in or upon the dwelling house, buildings, boats or improved or enclosed land . . . after having been forbidden so to do by the person who has lawful control of said premises, whether directly or by notice posted thereon . . .” G.L.c. 266, §120. Because the definition of criminal trespass is substantially similar to the definition of civil trespass, cases decided under the criminal statute are instructive. For example, “[t]he words ‘without right’ in the trespass statute . . . connote the absence of any right, permission, or license recognized by law as permitting an entry into an area described by the statute.” Commonwealth v. Wolf, 34 Mass.App.Ct. 949, 951 (1993).
Inherent in either definition is a requirement that, in order to be considered a trespasser, one must lack the property owner’s consent (actual or implied through passive acquiescence) and must also lack any recognized right to be on the premises. Both are relevant here. First, the plaintiff has not submitted any evidence indicating where, how, or to whom the notices were provided; and the defendants have submitted numerous affidavits stating that they never saw or received the written notices and further, that they never received any oral notices to vacate the premises. Indeed, the summary judgment record reveals that the defendants continue to pay the electric bill for the church, they have held religious services and decorated the church, and continue to possess a key to the premises. As a result, it is not clear that the defendants lack the owner’s consent to remain on the property.
Second, the defendants have introduced a provision of canon law that, on its face, purports to give them a right of entry for the purposes of divine worship. Although this court is without authority to interpret and apply this provision in this case, it does have the authority to recognize its existence as a possible defense to an action in trespass. Such matters are properly before the ecclesiastical tribunals of the Roman Catholic Church and not the business of the civil courts of this Commonwealth. Indeed, the defendants have filed an appeal of the church’s closure that remains pending.
The Bishop cites to a litany of civil trespass cases involving varying factual circumstances, i.e., soot particles invading property, water pipes being constructed without the use of eminent domain, construction of walls that encroach on another’s property, and overburdening of easements. Contrary to the Bishop’s assertion that the circumstances of this case are “precisely the same” as the cases cited, this case is readily distinguishable from those relied upon by the plaintiff, in that it directly implicates the First Amendment and the court’s refusal to become involved in ecclesiastical disputes.
*149 As such, both counts of the Bishop’s complaint must be dismissed for lack of jurisdiction.
II. Civil Rights Violations (Counterclaim Count I)
The defendants assert that the Bishop has violated their civil rights under the United States and Massachusetts Constitutions by seeking to have them evicted from Mater Dolorosa. At oral argument and in memoranda submitted, the defendants’ counsel pointed to alleged intimidation by security guards who were sent by the plaintiff in order to ensure the church remained free from vandalism. The defendants conceded, however, that their federal civil rights claim must fail because they cannot show any state action. See Macone v. Town of Wakefield, 277 F.3d 1, 9 (2002) (stating that a successful section 1983 action, providing damages for deprivation of rights secured by the U.S. Constitution, requires proof of two elements: “(1) the conduct complained of was carried out under color of state law and (2) this conduct deprived appellants of rights, privileges or immunities secured by the Constitution or laws of the United States”). See also White v. Peabody Constr. Co., 386 Mass. 121, 126 (1982) (“Admissions may properly be considered by a judge deciding a summary judgment motion under Mass.R.Civ.P. 56(c), and an admission may be established by a statement of counsel at oral argument”).
The defendants are not required to show state action in their Massachusetts civil rights claim. See G.L.c. 12, § 1II (providing for right of action and damages); Sena v. Commonwealth, 417 Mass. 250 (1994). Under the Massachusetts Civil Rights Act, however, the defendants must show that any deprivation (or attempted deprivation) of their rights was accomplished by threats, intimidation, or coercion. G.L.c. 12, §11H; Bally v. Northeastern University, 403 Mass. 713, 717 (1989). Notwithstanding the defendants’ assertions through counsel regarding security guards sent into the church by the Bishop, the summary judgment record is entirely devoid of evidence to allow the conclusion that any of the defendants were, objectively or subjectively, threatened, intimidated, or coerced into ceasing their exercise of their First Amendment rights. Indeed, of the seventeen affidavits filed by the defendants in this case, not one contains any mention of the alleged security guards at all, much less any indication that any of the defendants have been subjected to any threats, intimidation, or coercion whatsoever. In fact, many of the affidavits establish that the prayer vigil and various church events have been held without interruption from June 2011 to date, and without anyone asking the parishioners to leave the premises. As such, the Bishop is entitled to judgment in its favor on the defendants’ civil rights claim.
III. Fraud, Misrepresentation, and Breach of Fiduciary Duiy (Counterclaim Count II) and Breach of Fiduciary Duty—Failure to Produce Financial Statements (Counterclaim Count III)
The defendants’ allegations of fraud, misrepresentation, and breach of fiduciary duly contained in Count n of their counterclaim arises, in their own words, “out of the [p]laintiffs wrongful and false claims that the church steeple was falling, the paid member church parishioners had somehow suddenly turned into ‘trespassers,’ and the process that led to the proposed closing [was] fair.” The defendants further assert that “the counterclaim can not be dismissed as it leads to truth and justice.” The defendants’ claim for breach of fiduciary duly regarding the Bishop’s failure to provide financial statements arises out of an allegation that building maintenance funds were mismanaged and should be accounted to the parishioners, and that “the closing of Mater Dolorosa Church without a financial accounting of the funds to the paid members who made ‘specified gifts’ is wrongful, and such financial records should be produced.”
In sum, therefore, the defendants allege that the Bishop owed them a fiduciary duty to account for church funds, and that the Bishop made the following actionable misrepresentations: (1) that the defendants are trespassers; (2) that the church steeple was falling; and (3) that the process which led to the church closing was fair.
Assuming arguendo that the defendants have standing to maintain claims related to the use of church funds, their breach of fiduciary duty claims nonetheless fail for lack of jurisdiction. Massachusetts courts have consistently refused to recognize a fiduciary duly between a member of the clergy and a parishioner, because such an inquiry would require the court to impermissibly insert itself into matters of canon law. See, e.g., Maffei v. Roman Catholic Archbishop of Boston, 449 Mass. 235, 249 (2007) (“A ruling that a Roman Catholic priest, or a member of the clergy of any (or indeed every) religion, owes a fiduciary-confidential relationship to a parishioner that inheres in their shared faith and nothing more is impossible as a matter of law. Such a conclusion would require a civil court to affirm questions of purely spiritual and doctrinal obligation”); Wheeler v. Roman Catholic Archdiocese of Boston, 378 Mass. 58, 60 (1979) (“Under canon law, members of the Roman Catholic church, both lay and clerical, who are aggrieved by any action of their Ordinary (the Archbishop) should seek redress through the Archdiocesan judicial system, particularly the ecclesiastical court of the Archdiocese, the Metropolitan Tribunal”).
In light of the foregoing, Counts II and III of the defendants’ counterclaims must be dismissed for lack of jurisdiction.
ORDER
For the foregoing reasons, it is hereby ORDERED that the plaintiffs Motion for Summary Judgment is ALLOWED in part and DENIED in part, and the defendants’ Motion for Summary Judgment is ALLOWED in part, as follows: Counts I and II of the plaintiffs complaint are dismissed for lack of jurisdiction; Counts II and m of the defendants’ counterclaim are dismissed for lack of jurisdiction; and the plaintiff is entitled to judgment in its favor on Count I of the defendants’ counterclaim.

 Although the plaintiff asserts that the church and parish were at all times funded and operated by free-will offerings, and that membership dues were never required, several defendants have submitted affidavits indicating that for at least the past sixty-eight years, membership dues were required in order to remain a parishioner, as reflected by the parish book which states that “Only they are members of Mater Dolorosa Parish in Holyoke, Mass, whose names are inscribed in the parish books and who pay their dues regularly ...”

 The plaintiff offers support for this assertion by way of a deed copy attached to the verified complaint and, although the deed contains a description of the locus boundaries, it does not contain a property address. The defendants, disputing the claim of ownership, rely upon an unverified attachment to their Opposition to Request for Preliminary Restraining Order. The attachment appears to be a page from a newsletter-type publication regarding the history of Mater Dolorosa, published for its centennial. Notwithstanding the defendants’ assertion, and even if the exhibit were in a proper form for summary judgment purposes, the “article” merely states that “land was purchased from Thomas Dillon” in 1902 and that church members dug the foundation. Regardless of who dug the foundation, which is irrelevant to any ownership claims, if the bounds contained in the deed description are examined, one can readily conclude that the description encompasses the current location of Mater Dolorosa. The defendants have also asserted that they will perform a full title search during discovery, but they have failed to offer any admissible evidence to show that anyone other than the Bishop owns the real estate at issue.

 I note that no such statutory section exists in chapter 120 of the General Laws, which pertains to the Department of Youth Services and Massachusetts training schools.

 Rule 56(c) provides that “ftjhe judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and responses to requests for admission under Rule 36, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . . Summary judgment, when appropriate, may be rendered against the moving party.” Mass.R.Civ.P. Rule 56(c).