832                                          449 Mass. 832 (2007)

The General Convention of the New Jerusalem in the United States of America, Inc. *v.* MacKenzie.

## The General Convention of the New Jerusalem in the United States of America, Inc., & others[1] *vs.* Edward MacKenzie & others.[2]

Suffolk. September 5, 2007. - October 15, 2007.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, & Cordy, JJ.

*Practice, Civil,* Complaint, Motion to dismiss. *Religion. Jurisdiction,* Ecclesiastical controversy. *Contract,* Construction of contract, Church. *Conversion. Words,* "Cease to exist."

A Superior Court judge properly dismissed a claim brought by the plaintiff, the national denomination of certain churches, against the defendant, a local church that disaffiliated from the plaintiff, seeking a judgment declaring that, by virtue of the defendant's bylaw, all of the defendant's assets reverted to the plaintiff at the time of the defendant's disaffiliation, where the unambiguous bylaw at issue was triggered only by dissolution, and not by disaffiliation [835-838]; likewise, the plaintiff's claim for conversion failed, where the plaintiff was not the rightful owner of the assets retained by the defendant [839].

Civil action commenced in the Superior Court Department on August 4, 2004.

Motions to dismiss were heard by *Patrick F. Brady,* J., and entry of judgment was ordered by *Catherine A. White,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Howard M. Cooper (Julie E. Green* with him) for the defendants.

*Lawrence R. Kulig (Damon P. Hart* with him) for the plaintiffs.

Cowin, J. The defendant Boston Society of the New Jerusalem, Incorporated (Swedenborgian)[3] (the church or the Boston

---

[1]The Massachusetts Association of the New Jerusalem (Swedenborgian) and George Chapin.

[2]Thomas Kennedy; Boston Society of the New Jerusalem, Incorporated (Swedenborgian); and Bostonview Corporation.

[3]The parenthetical "Swedenborgian" is part of the official name of the

church), is a Swedenborgian church that disaffiliated from (withdrew from membership in) the plaintiff General Convention of the New Jerusalem in the United States of America, Inc. (the General Convention or the national body), a national denomination of congregational Swedenborgian churches. The national body commenced a civil action in the Superior Court, seeking, among other things, a judgment declaring that, under the Boston church's bylaws, this disaffiliation triggered a transfer of the Boston church's assets to the national body. In a related claim, the national body asserted that, because the disaffiliation caused ownership of the Boston church's assets to transfer to the national body, the retention of these assets by individual defendants Edward MacKenzie and Thomas Kennedy created a conversion. A judge in the Superior Court granted the defendants' motions to dismiss. The Appeals Court reversed the judgment with regard to these issues, while affirming the rest of the judgment. *General Convention of the New Jerusalem in the U.S.A., Inc.* v. *MacKenzie,* 66 Mass. App. Ct. 836, 844 (2006). We granted further appellate review limited to these issues, and now affirm the dismissal of these counts for failure to state a claim upon which relief can be granted.

1. *Facts.* We summarize the relevant facts as alleged in the amended complaint. Since its founding in 1818, the church has been affiliated with the General Convention. Under the leadership of MacKenzie and Kennedy, however, the church broke away from the General Convention in 2003. Prior to its disaffiliation, the church's bylaws contained numerous references to the General Convention. The provision at the heart of this litigation is entitled "Dissolution" and states:

> "In the event that the religious body known as the Boston Society of the New Jerusalem, Inc. shall cease to exist, all funds and holdings shall be transferred to the General Convention of the New Jerusalem in the United States of America.

> "These assets shall be held in escrow for the establishment of another General Convention of the New Jerusalem

defendant Boston church as well as the plaintiff Massachusetts Association of the New Jerusalem.

(Swedenborgian) Church within the City of Boston, Massachusetts. After a period of twenty (20) years, should no such Church exist, the capital and income therefrom shall revert to the General Convention of the New Jerusalem (Swedenborgian) with any restrictions of uses which may have been voted by the Society members at the time of the dissolution."

Since disaffiliation, the church has continued to function under the corporate name of the Boston Society of the New Jerusalem, Inc. (Swedenborgian). It retains the same pastor and carries on many of the same church and charitable services as it had prior to disaffiliation.

The plaintiffs filed an eleven-count complaint in the Superior Court. Count I sought a declaration that, by virtue of the Boston church's organizational bylaws, at the time of its disaffiliation from the General Convention, all of the Boston church's assets reverted to the General Convention to be held in trust for the establishment of another affiliated church. Count II alleged that the individual defendants wrongfully converted the assets of the General Convention to their own use. A judge in Superior Court allowed the defendants' motions to dismiss all of the plaintiffs' claims. See Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). With respect to count I, the Superior Court judge reasoned that the language of the dissolution bylaw was unambiguous and did not apply to a disaffiliation from the General Convention after which the church continued to exist. The Superior Court judge also dismissed the plaintiffs' claims for mismanagement and misappropriation of assets for lack of standing, explaining that "[s]uch authority rests exclusively with the attorney general."

The Appeals Court affirmed the judgments of dismissal except in regard to counts I and II, ruling that these counts should proceed. *General Convention of the New Jerusalem in the U.S.A., Inc.* v. *MacKenzie, supra.* The Appeals Court held that the dissolution bylaw was ambiguous because "the term 'cease to exist' is 'susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one.' " *Id.* at 842, quoting *County of Barnstable* v. *American Fin. Corp.*, 51 Mass. App. Ct. 213, 215 (2001). Thus, the

bylaw could apply to both disaffiliation and dissolution. The Appeals Court interpreted count II's conversion claim as "premised on the proposition that MacKenzie and Kennedy wrongfully converted assets of the General Convention for their own use," *id.* at 843 n.10, and thus permitted that count to proceed as well.

We conclude that the dissolution bylaw was not triggered by the disaffiliation because the plain text of the bylaw clearly contemplated only dissolution of the entity itself. Since the church remains the rightful owner of its assets, the plaintiffs' conversion claim also fails.

2. *Dissolution bylaw.* In reviewing a motion to dismiss, we accept as true all factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiffs. *Nader* v. *Citron*, 372 Mass. 96, 98 (1977). The complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiffs can prove no set of facts which entitle them to relief. *Id.*

The bylaws of a church corporation form a contract between the church and its members, and are interpreted according to principles of contract law.[4] See *Mitchell* v. *Albanian Orthodox Diocese in Am., Inc.*, 355 Mass. 278, 282 (1969); *Kubilius* v. *Hawes Unitarian Congregational Church*, 322 Mass. 638, 644 (1948). The words of a contract must be considered in the context of the entire contract rather than in isolation. See *Starr* v. *Fordham*, 420 Mass. 178, 190 (1995); *Charles I. Hosmer, Inc.* v. *Commonwealth*, 302 Mass. 495, 501-502 (1939). When the words of a contract are clear, they must be construed in their usual and ordinary sense, *Ober* v. *National Cas. Co.*, 318 Mass. 27, 30 (1945), and we do not admit parol evidence to create an ambiguity when the plain language is unambiguous, *Panikowski* v. *Giroux*, 272 Mass. 580, 583 (1930). In *Robert Indus., Inc.* v.

---

[4]As the Appeals Court concluded, the First Amendment to the United States Constitution does not prohibit a civil court from exercising jurisdiction over property disputes involving a church so long as the court does not intrude upon issues of church doctrine, polity, discipline, and internal operation. See *General Convention of the New Jerusalem in the U.S.A., Inc.* v. *MacKenzie*, 66 Mass. App. Ct. 836, 839-840 (2006), citing *Callahan* v. *First Congregational Church*, 441 Mass. 699, 708 (2004), and *Jones* v. *Wolf*, 443 U.S. 595, 602 (1979).

*Spence*, 362 Mass. 751, 753-754 (1973), we explained that extrinsic evidence may be admitted when a contract is ambiguous on its face or as applied to the subject matter. The initial ambiguity must exist, however. Furthermore, extrinsic evidence cannot be used to contradict or change the written terms, but only to remove or to explain the existing uncertainty or ambiguity. *Id.*

With these legal principles in mind, we turn to the facts of this case. The General Convention argues that the dissolution bylaw is ambiguous, and could apply to a disaffiliation of the church from the General Convention in addition to a dissolution of the church. The thrust of the argument is that the words "the religious body" could refer not only to "the Boston Society of the New Jerusalem, Inc.," as explicitly stated in the text, but also to "a religious body affiliated with the General Convention." Although the latter phrase is not found in the plain text of the dissolution bylaw, the General Convention argues that it is a possible interpretation. Upon disaffiliation, the "religious body affiliated with the General Convention" would thus "cease to exist." Another way to put the argument is that "cease to exist" is ambiguous, and could mean both "to dissolve" and "to disaffiliate." See *General Convention of the New Jerusalem in the U.S.A., Inc.* v. *MacKenzie, supra* at 842.

We do not locate an ambiguity in the language of the dissolution bylaw, and hold that it is triggered only upon dissolution, and not by disaffiliation. Massachusetts mandates that charities follow certain statutory procedures for dissolution, see G. L. c. 180, § 11A,[5] and the church has taken none of these steps. More importantly, it is undisputed that the church continues to exist, and that it engages in religious and charitable activities, much as it had done before disaffiliation.

Turning to the plain text of the bylaw, it is entitled "Dissolu-

---

[5]General Laws c. 180, § 11A, provides as follows:

"A charitable corporation constituting a public charity . . . which desires to close its affairs may, by vote of a majority of its board of directors, authorize a petition for its dissolution to be filed in the supreme judicial court setting forth in substance the grounds of the application for dissolution and requesting the court to authorize the administration of its funds for such similar public charitable purposes as the court may determine. The provisions of this section shall constitute the sole method for the voluntary dissolution of any such charitable organization."

tion," and disaffiliation is mentioned nowhere in the text. The text concerns only the "ceasing to exist" of "the religious body known as the Boston Society of the New Jerusalem, Inc." Our interpretation is supported by the final sentence of the bylaw, which provides that the use of reverted church assets will be in accordance with "any restrictions of uses which may have been voted by the [church] members at the time of dissolution." To read disaffiliation into this text is to strain the plain words more than contract law permits.

Plaintiffs argue that language stating that assets "shall be held in escrow for the establishment of another General Convention of the New Jerusalem (Swedenborgian) Church" renders the term "religious body" ambiguous. We discern no ambiguity. This language is consistent with dissolution. It may indicate the close relationship between the church and the General Convention at the time the church bylaws were drafted, but that fact does not create ambiguity in an otherwise clear text. Plaintiffs also argue that, if interpreted in the context of certain other articles of the bylaws, the dissolution bylaw could reasonably refer to disaffiliation. We disagree. Article III refers to affiliation with the General Convention since 1818 and the church's delegates' right to participate and vote at the General Convention's meetings. Article IV refers to transfers of membership to the church from other General Convention affiliated churches. Article VI provides for the election of a new pastor for the church, and requires that the new pastor be in good standing with the General Convention. Similar to the dissolution bylaw, these provisions also indicate the cooperative relationship between the church and the General Convention at the time of the drafting of the bylaws. They do not, however, create an ambiguity that "ceasing to exist" was intended to mean "disaffiliation."

Other States have taken a position in accord with the one we take today. For example, in *Christensen* v. *Roumfort*, 20 Ohio App. 3d 107, 108 (1984), the Court of Appeals of Ohio considered a provision stating that the United Presbyterian Church in the United States of America (UPCUSA) would gain control of a local church's property "[w]henever hereafter a particular church is formally dissolved by the presbytery, or has become extinct by reason of the dispersal of its members, the abandonment of

its work, or other cause . . . ." The court held that the church was not extinct even though it had disaffiliated from UPCUSA. *Id.* at 110. In *First Presbyterian Church* v. *United Presbyterian Church in the United States*, 62 N.Y.2d 110, 123, cert. denied, 469 U.S. 1037 (1984), the Court of Appeals of New York considered a UPCUSA provision stating that whenever a local church is dissolved, its property shall revert to UPCUSA. The court held that the local church's disaffiliation from UPCUSA was not a dissolution or extinction that would trigger this provision. See *id.* The Supreme Court of Missouri reached the same conclusion as the courts in Ohio and New York on nearly identical facts in *Presbytery of Elijah Parish Lovejoy* v. *Jaeggi*, 682 S.W.2d 465, 474 (Mo. 1984). Those jurisdictions that have awarded property from a local church to the parent church upon disaffiliation generally have done so on the basis of different assumptions as to the facts.[6] To the extent that the facts are not distinguishable, we nevertheless decline to follow the reasoning of these other courts.

Since the plain language of the dissolution bylaw is unambiguous, we do not consider extrinsic evidence such as allegations of what was intended when the dissolution bylaw was drafted.[7] Plaintiffs argue that we are required, in reviewing the motion to dismiss, to accept the General Convention's reading of the dissolution bylaw in favor of the General Convention, as a true factual allegation or reasonable inference. But the proper interpretation of the bylaw is a matter of law, *Berkowitz* v. *President & Fellows of Harvard College*, 58 Mass. App. Ct. 262, 270 (2003), and legal conclusions cast in the form of factual allegation are not taken as true on a motion to dismiss, *Schaer* v. *Brandeis Univ.*, 432 Mass. 474, 477-478 (2000).

---

[6]See, e.g., *Central Coast Baptist Ass'n* v. *First Baptist Church*, 154 Cal. App. 4th 586, 592 (2007) (holding that disaffiliated church had de facto dissolved when last vote of its full membership was to dissolve and to transfer assets to mother church); *Wisconsin Conference Bd. of Trustees of the United Methodist Church, Inc.* v. *Culver*, 243 Wis. 2d 394, 407-409 (2001) (holding that disaffiliated church had dissolved within meaning of State law when statute provided assets shall revert to Methodist denomination "[w]henever any local Methodist church or society shall become defunct or dissolved").

[7]We thus do not consider allegations in the amended complaint and in the affidavit of John Perry regarding circumstances surrounding the drafting of the dissolution bylaw.

3. *Conversion.* The plaintiffs' claim against the individual defendants MacKenzie and Kennedy for conversion also fails. Count II of the amended complaint alleged that (1) the assets of the church, as a result of the disaffiliation, were the property of the General Convention; (2) the individual defendants knew or should have known that they had no right to this property; and (3) the individual defendants, nonetheless, exercised acts of ownership and control over these assets for their own personal gain.

The defendants' primary argument is that plaintiffs have no standing to bring this claim, because the Attorney General has exclusive jurisdiction, with narrow exceptions, over management of charitable assets. *Weaver* v. *Wood,* 425 Mass. 270, 275-277 (1997). We need not address the issue of standing here. The conversion claim is premised on the fact that the General Convention is the rightful owner of the church's assets. Since we have rejected the General Convention's claim of ownership, the conversion claim fails on substantive grounds.

Accordingly, we affirm the judgment of the Superior Court as to counts I and II.

*Judgment affirmed.*