Connolly, Thomas E., J.
This action stems out of the purchase by the plaintiff, B&B Ventures, LLC (“B&B Ventures”), of twenty-five parking “easements” in a garage located in the Metropolitan Primary Condominium (“Condominium”) at One Nassau Street in Boston. B&B Ventures requests the court enter a declaratory judgment enforcing an alleged “warranty and representation” contained in the purchase and sale agreement against the defendants, Parcel C, LLC (“Parcel C”) and Metropolitan Parking, LLC (“Metropolitan Parking”). B&B Ventures also brings claims for breach of contract, breach of the covenant of good faith and fair dealing, misrepresentation, and violation of c. 93A.[1] The matter is now before the court on B&B Ventures’ Motion for Summary Judgment as to Liability and the defendants’ Cross Motion for Summary Judgment.
BACKGROUND
Parcel C developed the Condominium which is a mixed-use structure containing four units: the For-Sale Residential Unit, the Rental Residential Unit, the Commercial Unit, and the Parking Garage Unit. On July 28, 2005, Parcel C granted the Parking Garage Unit to Metropolitan Parking, which hired LAZ Parking to operate the garage.
Pursuant to a purchase and sale agreement dated March 6, 2006, Parcel C sold twenty-five parking easements to B&B Ventures for $675,000. The purchase and sale agreement specified that the easements would be conveyed by a “Parking Easement.” Section 4(E) of the purchase and sale agreement states, in relevant part:
SELLER warrants and represents that to the best of SELLER’S knowledge as of the date hereof . . . Parking Fees will be $45.00 per month with respect to the Parking Easement.
Further, Section II states:
The acceptance of the Unit Deed (and/or the Parking Easement, as applicable) by BUYER shall in all events be deemed a full performance and discharge of every obligation of SELLER made herein except for those agreements of SELLER relating to completion of punch list items set forth in Paragraph 5 hereof, or with respect to Unit Modifications pursuant to ExhibitF. OR WITH RESPECT TO ANY OTHER ITEM FOR WHICH PROVISION IS SEPARATELY [sic] MADE HEREIN THAT THE SELLER’S OBLIGATION SHALL CONTINUE IN EXISTENCE AFTER THE CLOSING.
(Emphasis in original.)
On April 28, 2006, Metropolitan Parking and B&B Ventures entered into a “Parking Easement,” whereby Metropolitan Parking granted B&B Ventures certain numbered parking easements.[2] Section 3 of the Parking Easement, entitled, “Assessment and Payment of Parking Fees” states:
Grantee shall be assessed and shall pay Parking Fees in accordance with the provisions of the Condominium Documents, including, without limitation, the provisions of. . . Article 8 of the Primary By-Laws. [3]
Section 8.4 of the Parking Easement states, in relevant part: “This Easement contains all of the agreements of the parties with respect to the subject matter thereof and supersedes all prior dealings between them with respect to the subject matter.”
On or about January 11, 2007, B&B Ventures received an undated letter from LAZ Parking, on behalf of Metropolitan Parking, stating the following:
Pursuant to the documents each easement holder is to be assessed a share of parking garage expenses based on the total number of spaces in the garage plus 10%. With total spaces of 250, the allocable *362 share is one/250th +/— 10% per easement. During May through December of 2006, there was an operating shortfall of approximately $60,000, or $240 per space or easement excluding real estate taxes. ($60,000/250 spaces = $240/space or easement).
In addition the garage was accessed [sic] by the city for real estate taxes (invoice attached). The allocation is $148.80 per space/easement. (37,200/250 spaces = $148.80/space or easement).
Lastly, the garage operating budget for 2007 is $607,107. This includes all operating costs, a 28,000 reserve fund, and estimated real estate taxes of $129,996. Metropolitan Parking LLC is currently appealing the real estate assessment. The pro-rata share of any savings would be accounted for to each easement holder. The allocable monthly share of projected 2007 expenses is 202.37 per space/easement.
(Emphasis added.)
Thus, LAZ Parking requested, per space/easement, a one-time payment to cover the 2006 May-December shortfall of $240 and a one-time payment to cover the 2006 real estate taxes of $149. Further, the monthly fee was raised to $202 per space/easement effective February 1, 2007.
On May 11, 2007, Metropolitan Parking sent a revised 2007 Expense Budget setting the monthly fee per parking easement as $101 effective June 2007 along with a retroactive increase for January through May of 2007. In addition, Metropolitan Parking stated that it would remove real estate taxes from the budget until it resolved its dispute with the City of Boston’s regarding the City’s assessment methodology. On June 28, 2007, monthly fees were again decreased to $91.50, retroactive to January 1, 2007. On November 15, 2007, LAZ Parking, on behalf of Metropolitan Parking, set the 2008 monthly fee at $95.00, exclusive of real estate taxes.
On January 7, 2010, after resolving the tax dispute with the City of Boston, LAZ Parking, on behalf of Metropolitan Parking, assessed a $1,583 fee per easement to cover the real estate taxes through December 31, 2009. Additionally, effective February 2010, easement holders would be billed quarterly for real estate taxes “which are currently estimated at $120 . . .”
DISCUSSION
Summary judgment shall be granted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond with evidence of specific facts establishing the existence of a genuine dispute. Pederson, 404 Mass. at 17.
An unambiguous agreement must be enforced according to its terms. Schwanbeck Federal Mogul Corp., 412 Mass. 703, 706 (1992). Whether a contract is ambiguous is a question of law for the court. Bank v. Thermo Elemental Inc., 451 Mass. 638, 648 (2008); Basis Technology Corp. v. Amazon.com, Inc., 71 Mass.App.Ct. 29, 36 (2008). Provisions in a contract are not ambiguous “simply because the parties have developed different interpretations of them.” Basis Technology Corp., 71 Mass.App.Ct. at 36. “Genuine ambiguity requires language ‘susceptible of more than one meaning [so that] reasonably intelligent persons would differ as to which meaning is the proper one.’ ” Id. at 36-37; Bank, 451 Mass. at 648, 651 (if language of contract supports “a reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken,” ambiguity exists and meaning of language must be determined by fact-finder). When interpreting a contract, the court must look at the contract as a whole. See Starr v. Fordham, 420 Mass. 704, 707 (1995); see Bank, 451 Mass. at 648 (court must “examine the language of the contract by itself, independent of extrinsic evidence concerning the drafting history or the intention of the parties”).
B&B Ventures seeks partial summary judgment as to the interpretation of the purchase and sale agreement. Specifically, B&B Ventures seeks a declaratory judgment that the defendants are “obligated by Parcel C’s contract with B&B Ventures to adopt as a base on which parking fee increases shall be calculated a figure of garage expenses, including real estate taxes and a ten percent contingency, that would have generated a parking fee per easement of $45 per month as of March 6, 2006, and that such expense figure shall from that time forward be the base upon which parking fees and parking fee increases shall be calculated on' a percentage basis.” The court first points out that there is absolutely no language in any document before the court, including in Section 4(E) of the purchase and sale agreement, that advances this type of warranty. Section 4(E) simply states “SELLER warrants and represents that to the best of SELLER’S knowledge as of the date hereof. . . Parking Fees will be $45.00 per month with respect to the Parking Easement.”
In addition, the general rule in Massachusetts is that “acceptance of a deed ordinarily merges all prior *363 covenants in the deed, discharging all obligations contained in the purchase and sale agreement except those specified in the deed itself.” Snyder v. Sperry & Hutchinson Co., 368 Mass. 433, 441-42 (1975) (premises were conveyed and buyer accepted deed which did not contain same express warranty as purchase and sale agreement); McMahon v. M&D Builders, Inc., 360 Mass. 54, 59 (1971) (“The acceptance of a deed of conveyance of land from one who has previously contracted to sell it, discharges the contractual duties of the seller to the party so accepting except such as are embodied in the deed . . .”). Here, Section 11 of the purchase and sale agreement stated:
The acceptance of. .. the Parking Easement... by BUYER shall in all events be deemed a full performance and discharge of every obligation of SELLER made herein except . . . WITH RESPECT TO ANY OTHER ITEM FOR WHICH PROVISION IS SEPARATELY [sic] MADE HEREIN THAT THE SELLER’S OBLIGATION SHALL CONTINUE IN EXISTENCE AFTER THE CLOSING.
B&B Ventures argues that Section 4(E) of the purchase and sale agreement qualifies as an “other item for which provision is separately made,” such that it “continued in existence after the closing” and obligated the defendants to adopt a “base fee” from which all future parking fee increases must be calculated. This court disagrees.
The language in Section 11 of the purchase and sale agreement that the acceptance of the Parking Easement shall be deemed a full performance and discharge of every obligation of SELLER except “with respect to any other item for which provision is separately made herein that the SELLER’S obligations shall continue in existence after the closing” clearly refers to Section 4(E) (i) of the purchase and sale agreement.[4] Section 4(E) (i) states, in relevant part:
SELLER further warrants and represents that pursuant to that certain Land Disposition Agreement as Amended and Restated . . . (“LDA”); the Transportation and Access Plan Agreement. . . (“TAPA”); and the Air Pollution and Control Commission (“APCC”) Downtown Parking Freeze Exemption Permit . . . (“Permit”), the conveyance of parking easements with respect to tweniy-five parking spaces located at the Metropolitan Residential I Condominium ... is determined to be in compliance with the LDA, TAPA, Permit and all other applicable legislation, orders, decisions or other agreements enforced or interpreted by the Boston Redevelopment Authority (BRA), the Boston Transportation Department (BTD), the APCC, [etc.] ... and buyer may without restriction lawfully resell, lease, rent or license the parking easements . . . Said warranty and representation shall survive delivery of easement from SELLER to BUYER for Jive (5) years from date of closing. If within five (5) years from date of closing, there is a claim against B&B’s right to have purchased, or lease, rent or sell any or all of the spots . . . then Parcel C LLC, and/or Peabody Properties, Inc. will indemnify B&B...
(Emphasis added.)
Section 4(E) (i) is clearly the “item” that Section 11 is referring to, i.e., the item for which provision was separately made indicating that the defendants’ obligation continued after the closing. In contrast, Section 4(E) of the purchase and sale agreement uses language inconsistent with a future obligation, i.e., “SELLER warrants and represents that to the best of SELLER’S knowledge as of the date hereof. . . Parking Fees will be $45.00 per month with respect to the Parking Easement” (emphasis added). The court concludes that the purchase and sale agreement is unambiguous and Section 11 is limited to preserving the warranty in Section 4(E)(i).[5] Thus, any warranty contained in Section 4(E) of the purchase and sale agreement did not survive the acceptance of the Parking Easement and B&B Ventures’ request for declaratory relief is denied.[6]
ORDER
For the reasons discussed above, it is hereby ORDERED that B&B Ventures’ Motion for Summary Judgment as to Liability be DENIED and the defendants’ Cross-Motion for Summary Judgment be ALLOWED.

The defendants counterclaim for breach of contract, alleging that B&B Ventures has failed to pay its proportionate share of the real estate taxes.

B&B Ventures does not dispute that Parcel C and Metropolitan Parking are “affiliated companies with common ownership and management.”

Section 8 of the Primary By-Laws addresses parking garage expenses and fees. Specifically, Section 8.4 states:
Parking Garage Expenses. The Garage Owner shall, after consideration of current or anticipated maintenance costs, including provision for working capital, a general operating reserve and a reserve fund for replacement, adopt a budget for the expenses to operate the Garage, which shall include commercially reasonable fees and expenses payable to the Garage Operator under the Garage Contract, as well as expenses related to administration, maintenance, and repair of the Garage and replacement of equipment used in connection therewith (the “Parking Budget”). The Parking Budget shall contain funds sufficient to permit the Garage to be operated and maintained in accordance with the standards set forth [in] Section 8.2(a) through (h), above.

The language in Section 4(E)(1) was unique to the agreement between B&B Ventures and Parcel LLC as was the bolded language in Section 11.

Even if the court were to hold that Section 11 is ambiguous, no reasonable jury could find that Section 11 applies to Section 4(E) based on the evidence in the summary judgment record. See The General Convention of the New Jerusalem in the U.S., Inc. v. MacKenzie, 449 Mass. 832, 836 (2007) (“[E]xtrinsic evidence may be admitted when a contract is ambiguous on its face or as applied to the subject matter”); Winchester Gables v. Host Marriott Corp., 70 Mass.App.Ct. 585, 591 (2007), quoting Waldstein v. Dooskin, 220 Mass. 232, 235 (1915) (“[W]here a contract is so expressed as to leave its meaning obscure, uncertain or doubtful, evidence of *364 the circumstances and conditions under which it was entered into are admissible, not to contradict, enlarge or vary its terms by parol, but for the purposes of ascertaining the true meaning of its language as used by the parties”). Specifically, while negotiating the terms of the purchase and sale agreement, on April 19, 2005, B&B Ventures, wrote:
3) 4 Deed/Title [-] Per our conversation, BUYER needs comfort that this conveyance of the parking easement is not restricted in any fashion. Consequently if we could get some language stating: “Notwithstanding other provisions of the P&S, the condo documents, LDA or other relevant document regarding this conveyance” and one of the following: 1) a rep/warranty from the SELLER that the conveyance is allowed, under the condo docs, LDA and all other relevant agreements to convey these parking agreements to B&B Ventures, LLC which is not currently a “Neighborhood Resident” as so defined in the LDA. 2) A legal opinion from SELLER’S counsel stating as such or 3) a letter from the relevant governmental agency (ie BRA and/or others) stating that its conveyance is not restricted in any fashion.
4) 4E—Please fill in a number of the parking charges. I understand that the current monthly parking charges are $45 per month.
On January 26, 2006, B&B Ventures wrote that the title policy contained “a few agreements that Parcel C, LLC has entered into” that B&B Ventures “would like to be covered in under the P&S rep and warranty .. . My suggestion is to edit Section 4E(i) . . . Also, under Section 11 (Acceptance of Unit Deed) counsel would like the following language added so that there is no miscommunication that the reps/warranties will survive post closing.” The language contained in the purchase and sale agreement accurately reflects the language B&B Ventures requested.

 the extent that the other claims brought by B&B Ventures are based on the $45 “warranty,” they must fail. Further, to the extent that the claims brought by B&B Ventures are based on the assessment of real estate taxes, they fail because B&B Ventures does not dispute that real estate taxes are a component of the “Parking Garage Expenses” as set out in Section 8.4 of the Primary By-Laws which can be increased at any time with notice. B&B Ventures was on notice that the defendants intended to collect real estate taxes once the dispute with the Oily of Boston was resolved. The court also dismisses B&B Ventures’s misrepresentation claim because Section 4(E) clearly states that the $45 estimate is “to the best of [Parcel C’s] knowledge as of the date hereof’ and it is undisputed that B&B Ventures was indeed charged $45 a month during 2006.